OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK

450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102
415.522.2000

**CASE NUMBER: C88-4280CAL**
CASE TITLE: ODDLE VS WOODFORD

<u>REASSIGNMENT ORDER</u>

GOOD CAUSE APPEARING THEREFOR,

IT IS ORDERED that this case is reassigned to the

**Honorable SAUNDRA BROWN ARMSTRONG** for all further proceedings.

Counsel are instructed that all future filings shall bear the initials **SBA** immediately after the case number.

ALL MATTERS PRESENTLY SCHEDULED FOR HEARING ARE VACATED AND SHOULD BE RENOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THE CASE HAS BEEN REASSIGNED.

Date: _____10/17/01_____

FOR THE EXECUTIVE COMMITTEE:

*Richard W. Wieking*
Clerk

NEW CASE FILE CLERK:
    Copies to: Courtroom Deputies
    Log Book Noted

Special Projects
Entered in Computer 10/17/01 MAB

CASE SYSTEMS ADMINISTRATOR:
    Copies to: All Counsel

Transferor CSA

NDC CSA-20



**Date:** 10/15/01 2:41 PM
**Sender:** Valarie Mark
**To:** Rufino Santos
**cc:** Thelma Nudo; MaryAnn Buckley; Lee Derin
**Priority:** Normal
**Subject:** Re[2]:Odle, 88-4280 CAL

Rufino -- this case is supposed to be reassigned off of the capital case wheel (category 16). Please make sure that Intake is aware of this requirement. If there are any questions, please call me. Thank you! -- Valarie

_____Reply Separator_____
Subject:    Re:Odle, 88-4280 CAL
Author:     Rufino Santos
Date:       10/15/01 2:32 PM

I received the certified judgment in the Odle case. I'll give instructions to Thelma to reopen the case and have intake reassign the case. I'll also remind her to give you a copy of the reassignment order so you'll know who the new judge is.

_____Reply Separator_____
Subject:    Odle, 88-4280 CAL
Author:     Valarie Mark
Date:       10/11/01 10:44 AM

Just a reminder -- according to the 9th Circuit's docket, the Supreme Court order denying certiorari in this case was filed on October 9, 2001. So, I expect the file and mandate to be returning from the 9th Circuit any day now. Please let me know when you receive it so that the case can be reassigned to a new judge -- thank you -- Valarie

*[Handwritten notes:]*
*Pls. re-assign case -- TMF*
*Reassign off the capital case wheel (cat 16)*
*REOPEN. Return doc to me after you docket it. Thanks. RCS*

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking, Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

October 15, 2001

**FILED**
OCT 15 2001
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CASE NUMBER: C-88-4280-CAL

CASE TITLE: James Richard Oddle v. Jeanne Woodford, Warden

DATE MANDATE FILED: October 15, 2001

TO COUNSEL OF RECORD:

The *mandate* of the United States Court of Appeals for the Ninth Circuit has been filed in the above captioned case.

Sincerely,

RICHARD W. WIEKING, Clerk

by: Thelma Nudo
Deputy Clerk

Distribution:  CIVIL      -   Counsel of Record

CRIMINAL   -   Counsel of Record
                U.S. Marshal (Copy of Mandate)
                U.S. Probation Office

NDC App-16

o:\csaaforms\civil\mandate.mrg

JUDGMENT
================================================================

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

----------------

NO. 99-99029
CT/AG#: CV-88-04280-CAL

**FILED**

OCT 1 5 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFO

JAMES RICHARD ODLE

    Petitioner - Appellant

v.

JEANNE WOODFORD, Warden, of California State Prison at San Quentin

    Respondent - Appellee

----------------------

APPEAL FROM the United States District Court for the Northern District of California (San Francisco).

THIS CAUSE came on appeal to be heard on the Transcript of the Record from the United States District Court for the Northern District of California (San Francisco) and was duly submitted.

ON CONSIDERATION WHEREOF, It is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is REVERSED AND REMANDED.

Filed and entered February 6, 2001

```
A TRUE COPY.              10/11/01
ATTEST

CATHY CATTERSON
Clerk of Court

by: Pinky Angurus
    Deputy Clerk

This certification does constitute the
mandate of the court.
```

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES RICHARD ODLE,<br>    *Petitioner-Appellant,*<br>v.<br>JEANNE WOODFORD, Acting<br>Warden, of California State Prison<br>at San Quentin,<br>    *Respondent-Appellee.* | No. 99-99029<br>D.C. No.<br>CV-88-04280-CAL<br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles A. Legge, District Judge, Presiding

Argued and Submitted
November 14, 2000—San Francisco, California

Filed February 6, 2001

Before: Alex Kozinski, Michael Daly Hawkins and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY

**Criminal Law and Procedure/Due Process**

The court of appeals reversed a judgment of the district court and remanded the case. The court held that where a petitioner has suffered massive trauma to his brain and subsequently exhibits psychotic behavior, some of it while awaiting

1571

1572          ODLE v. WOODFORD

trial, a failure to inquire into whether he possesses the mental acuity to participate in the proceedings denies him his right to due process.

In 1973, appellant James Odle was in a car accident causing severe trauma to his brain. A surgeon removed a grapefruit-sized piece of his brain, leaving only a flap of skin to cover the opening in his skull. Thirteen months later, when Odle complained, the surgeon inserted a plate to close the opening.

Prior to the accident, there were no records that Odle suffered mental health problems. After the accident, Odle's behavior changed significantly. He was confused and talked slowly; had trouble controlling his impulses, often acting bizarrely and wildly; and, was involuntarily committed to a psychiatric ward three times in three years following the accident. Doctors diagnosed him as suffering acute brain syndrome, and described him as acting combative, assaultive, agitated and disoriented.

None of the various tranquilizers or antidepressants doctors prescribed for Odle altered his behavior. Two years later, he was committed again. While imprisoned in 1976, he attempted suicide. After his release in 1979, his behavior continued to worsen.

In 1983, Odle was charged with two counts of first degree murder. The trial court had before it a comprehensive record of Odle's mental health history, and heard the testimony of expert witnesses who described the extensive damage to Odle's brain. Odle appeared calm during the proceedings. His counsel never requested a competency hearing. No competency hearing was held.

Odle was convicted and sentenced to death. He unsuccessfully exhausted his state remedies and filed a federal habeas

petition raising fifty-six claims. The district court denied relief. Odle appealed.

The court of appeals issued a Certificate of Appealability for five issues, including whether the state court's failure to hold a competency hearing denied him due process. The court of appeals considered this issue.

[1] A defendant may not be criminally prosecuted while he is incompetent, and the state must give him access to procedures for determining his competency. A trial judge must conduct a competency hearing whenever the evidence before him raises a bona fide doubt about the defendant's competence to stand trial, even if defense counsel does not ask for one.

[2] Calm behavior in the courtroom is not necessarily inconsistent with mental incompetence. Odle's behavior in the courtroom did not refute the large body of clinical evidence that tended to cast doubt on his competence.

[3] Odle's counsel was not a trained mental health professional; his failure to raise Odle's competence does not establish that Odle was competent. Nor does it mean that Odle waived his right to a competency hearing.

[4] The record revealed an extensive history of Odle's mental impairment, and expert testimony and jail records suggested that his mental problems continued to the time of trial. The trial judge was aware that Odle was missing a grapefruit-sized piece of his brain.

[5] A reasonable jurist, given the information available, would have developed doubts about whether Odle was incompetent to stand trial. Where a petitioner has suffered massive trauma to his brain and subsequently exhibits psychotic behavior, some of it while awaiting trial, an inquiry into whether he possesses the mental acuity to participate in the

proceedings is the reasonable and appropriate course of action. Failure to do so denied Odle his right to due process.

## COUNSEL

James R. Forbes, Lillick & Charles LLP, San Francisco, California, argued the cause for Appellant.

Dane R. Gillette, Senior Assistant Attorney General of the State of California, San Francisco, California, argued the cause for Appellee.

## OPINION

**KOZINSKI**, Circuit Judge.

We consider the circumstances in which a criminal defendant is entitled to a hearing to determine his competency to stand trial.

I

James Richard Odle was tried and convicted in 1983 of two first degree murders and sentenced to death. He unsuccessfully exhausted his state court remedies and filed a federal habeas petition raising fifty-six claims. After protracted proceedings, the district court denied all relief in 1999,[1] and Odle appeals.

---

[1] The district court first denied Odle's original petition, see Odle v. Vasquez, 754 F. Supp. 749 (N.D. Cal. 1990), but later granted his motion to reconsider, and he filed an amended petition in 1993. The court granted the state's motion for summary judgment on certain claims, see Odle v. Calderon, 884 F. Supp. 1404 (N.D. Cal. 1995), and then denied all but three of the remaining claims. See Odle v. Calderon, 919 F. Supp. 1367 (N.D. Cal. 1996). After an evidentiary hearing on two of them, the court denied all three claims. See Odle v. Calderon, 65 F. Supp. 2d 1065 (N.D. Cal. 1999).

Odle filed his habeas petition before the Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996, and so AEDPA does not apply to the merits of this appeal. However, he is subject to AEDPA's procedural requirement that he obtain a Certificate of Appealability (COA). *See Slack* v. *McDaniel*, 120 S. Ct. 1595, 1603 (2000).[2] Because Odle filed his appeal before *Slack* was decided, we construe his notice of appeal as an application for a COA, and determine whether he has made a "substantial showing of the denial of a constitutional right" with respect to each issue he seeks to raise on appeal. *See id.*; *Morris* v. *Woodford*, 229 F.3d 775, 779 (9th Cir. 2000).[3]

Odle raises nine claims before us. To make a "substantial showing," he must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed." *Slack*, 120 S. Ct. at 1603-04 (internal quotation marks omitted). Five of his claims meet this standard, and we issue a COA as to each of the following issues: (1) whether his first attorney's mental incompetence denied him effective assistance of counsel; (2) whether his replacement attorney had an actual conflict that denied him effective assistance of counsel; (3) whether his attorney's failure to develop and present available mental health expert testimony at the penalty phase denied him effective assistance of counsel; (4) whether the state court's failure to hold a competency hearing denied him due process; and (5) whether the district court's failure to hold a competency hearing denied him due process.[4] At this time, we consider only the fourth of these claims.

---

[2] The district court granted Odle's request for a Certificate of Probable Cause (CPC) on October 4, 1999. A CPC, unlike a COA, permits an appeal as to the denial of the entire petition rather than specific issues as required by 28 U.S.C. § 2253(c)(3).

[3] The district court denied all fifty-six claims that Odle brought in his habeas petition. Odle raises only nine of those claims on appeal and so has abandoned the other forty-seven. *See Morris*, 229 F.3d at 779.

[4] Odle has not made a "substantial showing that he was denied a constitutional right" with respect to the following four claims: (1) whether his

1576                     ODLE v. WOODFORD

## II

[1] A defendant may not be criminally prosecuted while he is incompetent, and the state must give him access to procedures for determining his competency. See *Medina v. California*, 505 U.S. 437, 449 (1992) (citing *Drope v. Missouri*, 420 U.S. 162, 172-73 (1975); *Pate v. Robinson*, 383 U.S. 375, 386 (1966)). We have held that a trial judge must conduct a competency hearing whenever the evidence before him raises a bona fide doubt about the defendant's competence to stand trial, even if defense counsel does not ask for one. See *De Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (en banc). The trial judge must satisfy himself that the defendant is able to understand the proceedings against him and assist counsel in preparing his defense. See *Drope*, 420 U.S. at 172 (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

We review the record to determine whether evidence before the state trial court raised a "bona fide doubt" that Odle was competent to stand trial. See *Pate*, 383 U.S. at 385; *De Kaplany*, 540 F.2d at 979. If a reasonable judge would have had such a doubt, Odle was entitled to a competency hearing at the time of trial and the failure to hold such a hearing violated his right to due process. See *Moran v. Godinez*, 57 F.3d 690, 695 (9th Cir. 1995).

Odle's mental troubles started in 1973 when he suffered severe trauma to his brain as a result of a car accident. A surgeon performed a temporal lobe lobectomy, removing a 3 x 3 x 4 inch piece of his brain. The surgery left just a flap of

---

attorney's stipulation to a disputed issue of fact regarding ballistics denied him effective assistance of counsel; (2) whether the state knowingly presented false testimony by an expert witness that denied him due process; (3) whether the state's failure to disclose information about an expert witness's potential bias denied him due process; and (4) whether cumulative errors denied him a fundamentally fair trial. We therefore decline to issue a COA as to each of them.

skin to cover the opening in his skull, and only when Odle complained thirteen months later that his brain was pulsating beneath the skin, did the surgeon insert a plastic plate to close the opening. Doctors, family and friends testified that this experience left Odle "a different guy," one who appeared to be mentally unstable and out of control.

Family members and employers further testified that the Odle they knew before the accident and the man he became afterwards were like "night and day." He changed from a man who did not miss "a day he was supposed to work" to one who was "more like . . . half of a person." He seemed confused and talked slowly, like a child; he had trouble controlling his impulses and often acted bizarrely and wildly. He would get a "hot look in his eye like a junk-yard dog" and would "beat his head against the wall."

Mental health records and expert witnesses offered an explanation for the erratic behavior and personality change that Odle's family and friends had observed: Odle may never have recovered from the severe trauma he suffered in the car accident. While county health records revealed no mental disturbances or mental health visits prior to the accident, Odle was involuntarily committed to a psychiatric ward three times in as many years following the accident. The first time, he was hospitalized after taking twelve Tylenol tablets. "[F]or the greater part of his [nine day] hospital stay," Odle acted "combative, assaultive, agitated [and] disoriented," and a nurse found him pounding his head against the wall. Doctors diagnosed him as suffering from "acute brain syndrome." Later that year, the same day he was discharged from the surgery to close his skull, Odle was committed a second time. He "had become violent, he threatened himself [and] others." As another doctor described it, "he seemed to have little control over these outbreaks."

As Odle went in and out of the psychiatric ward, doctors prescribed him different medications, including tranquilizers

and antidepressants. But nothing altered his erratic, out-of-control behavior. Two years later, he was committed again, after someone found him prowling around a stranger's backyard, "incoherent," "reliving combat or war somewhere," "confused" and "hallucinating." This pattern ended only when he went to prison in 1976. While there, he slashed his wrists in an attempted suicide. After he was released at the end of 1979, his family believed that he continued to "go downhill" and was not acting "in his right mind."

The trial judge had before him a comprehensive record of this history and heard the testimony of expert witnesses who described the extensive damage to Odle's brain. Doctors testified that Odle probably suffered from an organic brain disorder, which causes "defects in the way [a person] functions intellectually, socially, and emotionally." One psychiatrist asserted generally that severe head injuries like the one Odle suffered could cause seizure disorders affecting behavior for a prolonged period of time. Another doctor had administered an electroencephalogram in 1982, before trial, which revealed brain abnormalities consistent with an epileptic seizure disorder. He testified that Odle's brain injury would probably cause behavioral disturbances beyond his control. This diagnosis was consistent with Odle's complaints, documented during his hospitalizations, that he often felt unable to control his impulses.

[2] The State argues that this evidence of mental impairment is irrelevant because Odle appeared calm in the courtroom. But calm behavior in the courtroom is not necessarily inconsistent with mental incompetence. Some forms of incompetence manifest themselves through erratic behavior, others do not. Odle's behavior in the courtroom does not refute the large body of clinical evidence which tended to cast doubt on his competence.

Moreover, records from the county jail suggest that this calm masked continuing mental impairment. Less than a year

ODLE v. WOODFORD 1579

before the trial began, prison officials found Odle lying face down in his jail cell, apparently unconscious. Odle had attempted to commit suicide by setting fire to his cell. The prison's mental health staff diagnosed this as a brief psychotic episode and, given his history of depression and past suicide attempts, placed him in a suicide observation room for several weeks.

[3] The State also relies on the fact that Odle's own lawyer did not question his competence at the time of trial. It is true that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina*, 505 U.S. at 450. But counsel is not a trained mental health professional, and his failure to raise petitioner's competence does not establish that petitioner was competent. Nor, of course, does it mean that petitioner waived his right to a competency hearing. *See Miles v. Stainer*, 108 F.3d 1109, 1113 (9th Cir. 1997).[5]

[4] We do not dismiss lightly the fact that no one questioned Odle's competence over the course of two years of pre-trial proceedings and twenty-eight days of trial. *See Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) ("We deem significant the fact that the trial judge, government counsel, and [petitioner's] own attorney did not perceive a reasonable cause to believe [petitioner] was incompetent."). The observations of those interacting with petitioner surely are entitled to substantial weight. But personal observations cannot overcome the significant doubt about Odle's competence raised by the clinical evidence. The record revealed an extensive history of mental impairment, and expert testimony and jail records

---

[5]A petitioner who may be incompetent cannot "knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial," *Pate*, 383 U.S. at 384, nor should he " 'be presumed to possess sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp.' " *Medina*, 505 U.S. at 450 (quoting *United States v. DiGilio*, 538 F.2d 972, 988 (3d Cir. 1976)).

suggested that Odle's mental problems lay not just in the past, but continued to the time of trial. *Cf. United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318-19 (9th Cir. 1997) (competency hearing required where defendant attempted suicide on eve of trial and trial court failed to elicit adequate information to dispel concerns). And, as the trial judge was aware, Odle was missing a piece of his brain the size of a grapefruit.

[5] None of this establishes that Odle was incompetent to stand trial. But we believe a reasonable jurist, given the information available, would have developed doubts on this score. After all, competence to stand trial does not consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense. *See Dusky*, 362 U.S. at 402; *see also* Note, *Incompetency to Stand Trial*, 81 Harv. L. Rev. 454, 457-59 (1967). The judge may be lulled into believing that petitioner is competent by the fact that he does not disrupt the proceedings, yet this passivity itself may mask an incompetence to meaningfully participate in the process.[6] Where a petitioner has suffered massive trauma to his brain and subsequently exhibits psychotic behavior, some of it while awaiting trial, an inquiry into whether he possesses the mental acuity to participate in the proceedings is the reasonable and appropriate

---

[6]In a declaration submitted to the state supreme court, Odle's trial lawyer explains Odle's calmness in the courtroom as a strategy for controlling his behavior during trial proceedings. *See* Decl. of William E. Gagen, Jr. (dated Apr. 3, 1992), Petitioner's Ex. 34, Reply to Opposition to Petition for Writ of Habeas Corpus, *In re Odle*, No. S022451 (Cal. Sept. 16, 1992). Because the lawyer was concerned "about the potential for [Odle] to explode irrationally in court," the lawyer "encouraged him to block out the proceedings whenever they began to agitate him." He coached Odle to "stare at a particular object or objects in the courtroom, such as a coffee cup or sign, so that he could simply focus on those to the exclusion of events in the courtroom that might disturb him." *Id.* at 6. While this evidence was not available to the state trial judge, it illustrates the danger of relying on calm behavior in the courtroom as a guide to mental competence.

course of action. Failure to do so denied Odle his right to due process. *See Drope*, 420 U.S. at 172.

The state court can nonetheless cure its failure to hold a competency hearing at the time of trial by conducting one retroactively. We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment. *See De Kaplany*, 540 F.2d at 986 & n.11; *see also Moran*, 57 F.3d at 696. Although many years have passed since Odle was convicted and sentenced, the state trial court should be able to "adduce sufficient evidence" to determine whether Odle was competent to stand trial. *Evans v. Raines*, 800 F.2d 884, 888 (9th Cir. 1986).[7] Expert witnesses who testified at trial, as well as experts who have since examined Odle, submitted declarations describing Odle's mental state at the time; defense counsel and an investigator submitted declarations describing Odle's behavior during trial proceedings. Moreover, medical records, psychiatric reports and jail records submitted at trial are still available. Given this old and new evidence, "it is not unreasonable to conclude that a fair retroactive hearing could be . . . conducted." *De Kaplany*, 540 F.2d at 986 n.11.

We therefore remand the case to district court with instructions to grant the writ unless the state trial court conducts a hearing within sixty days to determine whether Odle was competent at the time he stood trial. *See Miles*, 108 F.3d at 1114. The district court shall retain jurisdiction. If the state court vacates the conviction, the district court shall dismiss the habeas petition. If it upholds the conviction, the district court shall review the state court's determination consistent with this opinion. We retain jurisdiction over the case and, if the competency claim is ultimately resolved against him, we

---

[7] If the state trial court concludes that it is unable to conduct a retrospective competency hearing, then the conviction must be set aside.

will review Odle's remaining four claims as to which we grant the COA. *See Morris*, 229 F.3d at 781.

**REVERSED AND REMANDED.**

INTERNAL USE ONLY: Proceedings include all events.
99-99029 Odle v. Woodford

| | |
|---|---|
| JAMES RICHARD ODLE<br>    Petitioner - Appellant | James R. Forbes<br>FAX 415/984-8300<br>415/984-8200<br>Suite 2700<br>[COR LD NTC cja]<br>LILLICK & CHARLES LLP<br>Two Embarcadero Center<br>San Francisco, CA 94111-3996<br><br>Susan K. Alexander, Esq.<br>FAX 415/288-4534<br>(415)288-4545<br>Suite 2600<br>[COR LD NTC]<br>MILBERG WEISS BERSHAD HYNES &<br>LERACH LLP<br>100 Pine Street<br>San Francisco, CA 94111-1250 |
| v. | |
| JEANNE WOODFORD, Warden, of<br>California State Prison at San<br>Quentin<br>    Respondent - Appellee | Dane R. Gillette, DAG<br>FAX 703-5877<br>415/703-5866<br>Suite 11000<br>[COR LD NTC dag]<br>CALIFORNIA ATTORNEY GENERAL<br>Office of the Attorney General<br>455 Golden Gate Avenue<br>San Francisco, CA 94102-3664 |

Susan K. Alexander, Esq.
MILBERG WEISS BERSHAD HYNES & LERACH LLP
Suite 2600
100 Pine Street
San Francisco, CA 94111-1250


rk
99-99029