1  LERACH COUGHLIN STOIA
   GELLER RUDMAN & ROBBINS, LLP
2  SANFORD SVETCOV (36561)
   SUSAN K. ALEXANDER (124276)
3  100 Pine Street, Suite 2600
   San Francisco, CA  94111
4  Telephone: 415/288-4545
   Facsimile: 415/288-4534
5  – and –
   NIXON PEABODY LLP
6  JAMES R. FORBES (114863)
   Two Embarcadero Center, Suite 2700
7  San Francisco, CA  94111
   Telephone:  415/984-8200
8  Facsimile: 415/984-8300

ORIGINAL
FILED

APR - 3 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12  JAMES RICHARD ODLE,                    )
                                           )
13              Petitioner,                )   No. C-88-4280-SBA
                                           )
14  vs.                                    )   PETITIONER'S APRIL 2006 STATUS
                                           )   REPORT PER COURT ORDER OF
15  JEANNE WOODFORD, Acting Warden of      )   OCTOBER 26, 2001
    San Quentin State Prison,              )
16                                         )
                Respondent.                )
17  _____)

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to this Court's October 26, 2001 Order, petitioner files this report to inform the

2   Court of the status of the state competency proceedings.

3    The California Court of Appeal for the First Appellate District heard oral argument on

4   January 18, 2006 in connection with Mr. Odle's Petition for Writ of Prohibition.

5    On March 29, 2006, the Court of Appeal filed an unpublished decision issuing a peremptory

6   writ of mandate directing the superior court to vacate its order finding that a retrospective

7   competency hearing is feasible.  A copy of the decision is attached.

8    The Court of Appeal held that the record did not support the superior court's ruling that it is

9   feasible to retrospectively evaluate defendant's competency in 1983. (Majority Opinion 22)  The

10  Court of Appeal further held that the superior court misunderstood the showing the State was

11  required to make at the feasibility hearing to sustain its burden of proof that a retrospective

12  competency hearing was feasible. (Majority Opinion 16)  The Court of Appeal reasoned that the

13  superior court erred in finding feasibility based on the fact that (i) testimony from trial defense

14  counsel was "available," and that (ii) Odle was "available" for a current competency examination,

15  without requiring the State to show that trial counsel "would be able to provide meaningful

16  information" about Odle's condition in 1983, and also show that any current psychiatric evaluation

17  would provide meaningful information about petitioner's competency to stand trial in 1983.

18  (Majority Opinion 16-18, 20-21)

19   Accordingly, the majority remanded to the trial court with instructions to reopen the

20  feasibility hearing and conduct further proceedings on two issues, as follows:

21       (1) whether Odle's trial counsel, William Gagen, has sufficient recollection of non-
         privileged matters so as to provide affirmative evidence at a retrospective
22       competency hearing on the question of whether Odle understood the nature of the
         proceedings and was able to assist counsel in the conduct of a defense in a rational
23       manner; and (2) whether Odle is able to participate in a meaningful psychiatric
         evaluation and whether such a current evaluation would assist a fact finder at a
24       retrospective competency hearing in determining Odle's competency to stand trial in
         1983.  After conducting these proceedings and considering the evidence received
25       both then and previously, the court should reevaluate whether a retrospective
         competency hearing is feasible as to petitioner. (Majority Opinion 23)

26   The majority disagreed with the concurring and dissenting justice's view that the state

27  waived the remanded issues by failing to produce evidence on either of them at the feasibility

28

1    hearing. (Majority Opinion 18-21) The concurring and dissenting justice agreed that the feasibility

2    order should be vacated, but concluded the State had not only waived the right to present the

3    additional evidence specified, but also that such evidence could not, as a matter of law, compensate

4    for the absence of contemporaneous medical evidence and the passage of 23 years.  (Dissenting

5    Opinion 1-25) Accordingly, rather than remand for further proceedings on feasibility as the majority

6    ruled, the dissent would reverse outright, hold that a meaningful retrospective determination of

7    Odle's competence to stand trial in 1983 is not feasible in the circumstances of this case, and allow

8    the State to refile charges and seek a determination of present competency. (Dissenting Opinion 24)

9         Under California law, the parties have 15 days to petition for rehearing and 40 days to file a

10   petition for review in the California Supreme Court. (*See* California Rules of Court ("CRC") 25(b)

11   and 28(e)) The Court of Appeal decision is final in 30 days. (*See* CRC 24(b)(1)). But the remittitur

12   of the Court of Appeal does not issue until the California Supreme Court denies review. (*See* CRC

13   26(b)(1)) If, however, the California Supreme Court grants review, there will be further merits

14   briefing, oral argument and decision in that court. (*See* CRC 29-29.6)

15        Apart from the Court of Appeal decision, there is a separate proceeding pending in federal

16   court on Petitioner's Freedom of Information Act claim.  The Department of Justice's summary

17   judgment motion in connection with Petitioner's claim has been fully briefed.  The parties are

18   awaiting a hearing date from the court.

19        Petitioner will file his next status report with this Court on June 30, 2006.

20   DATED:  March 31, 2006                    LERACH COUGHLIN STOIA
                                               GELLER RUDMAN & ROBBINS LLP
21                                             SANFORD SVETCOV
                                               SUSAN K. ALEXANDER
22

23

24                                             SANFORD SVETCOV

25                                             100 Pine Street, Suite 2600
                                               San Francisco, CA 94111
26                                             Telephone:  415/288-4545
                                               Facsimile:  415/288-4534
27

28                                             NIXON PEABODY LLP
                                               JAMES R. FORBES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Two Embarcadero Center, Suite 2700
San Francisco, CA   94111
Telephone:  415/984-8200
Facsimile:  415/984-8300

Counsel for Petitioner

H:\Odle\StatusReportApril2006.doc



Filed 3/29/06

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

**FILED**

MAR 29 2006

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____
DEPUTY

JAMES RICHARD ODLE,

    Petitioner,

v.

THE SUPERIOR COURT OF CONTRA COSTA COUNTY,

    Respondent;

THE PEOPLE,

    Real Party in Interest.

A109985

(Contra Costa County
Super. Ct. No. 24580)

## I. INTRODUCTION

In *Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089-1090 (*Odle*), the United States Court of Appeals for the Ninth Circuit held that, when petitioner James Odle was tried in 1983, the trial court had before it evidence that raised a "bona fide doubt" of Odle's competence to stand trial. The court concluded that the failure to hold a competency hearing violated Odle's right to due process. (*Id.* at p. 1089.) But the *Odle* court also held: "The state court can nonetheless cure its failure to hold a competency hearing at the time of trial by conducting one retroactively." The court remanded the matter to determine whether such a hearing would be feasible. (*Id.* at pp. 1089-1090.)

A feasibility hearing has now been held. At the conclusion of that hearing, the trial court held that, based on the evidence before it, a retrospective determination of Odle's competence would be feasible. Odle challenged this ruling in a petition for writ of

1

prohibition or mandate seeing to set aside the trial court's determination. In June 2005, we summarily denied that petition; Presiding Justice Kline dissented. Our Supreme Court granted review and transferred the matter back to us, with directions that we vacate our earlier decision and order respondent to show cause why the relief sought in the petition should not be granted. We have done so.

Odle first argues that we should independently review the trial court's conclusion that a retrospective competency hearing is feasible. Second, Odle contends the People were required to show clear and convincing evidence of feasibility. Third, he contends the trial court erred under any standard of review when it concluded his competency could be determined retrospectively. Fourth, Odle contends the trial court was not entitled to rely, in making its feasibility determination, on a statement he made to a psychiatrist that was later found to be involuntary. Finally, Odle argues the burden of proof on the ultimate issue of his competency should lie with the People, rather than with him.

We conclude that the trial court misunderstood, in two significant respects, the type of evidence the law requires the People to adduce in order to sustain their burden of proof. Therefore, we order that a peremptory writ of mandate be issued commanding the trial court to vacate its order finding a retrospective competency hearing feasible and remand the matter to the trial court so that the People may attempt to adduce that evidence.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1983, petitioner James Odle was tried and convicted of first degree murder and sentenced to death. In 1988, that judgment was affirmed on automatic appeal by our Supreme Court in *People v. Odle* (1988) 45 Cal.3d 386. In 2001, the Ninth Circuit held that the trial court erred when it failed to order a competency hearing because there was substantial evidence at the time Odle was tried that he was not competent to stand trial. (*Odle, supra,* 238 F.3d at p. 1089.) The court remanded the matter to the federal district court with instructions to grant relief unless the state trial court determined a retrospective competency hearing could be held. (*Id.* at pp. 1089-1090.)

2

Three years later, the Contra Costa County trial court heard testimony and argument on the feasibility of making a retroactive determination of Odle's competency when he was tried in 1983. The relevant evidence is summarized below.

1.      *1980 Winig Interview*

The sole witness at the feasibility hearing was an expert in neuropsychology and forensic psychiatry, Dr. Daniel Martell. Martell testified that the People provided him with 3,000 pages of documents. After reviewing these documents, he concluded the "single most important piece of evidence" of Odle's "competency at the time of his arrest" and "richest source of evidence contemporaneous to the trial" was an interview conducted by a Dr. Hugh Winig, in 1980, immediately after Odle was arrested.

Winig interviewed Odle immediately after his arrest, and three years before his trial. Martell described the interview, which he reviewed in its transcribed, rather than recorded, form as "the closest proxy that we have in the record to an actual competency evaluation, although it does not encompass all the components that one would generally want to see in a proposed competency exam." Martell testified that, although Winig did not "set[] out to evaluate Mr. Odle's competency . . . he touches on many of the same things . . . ." In the interview, Odle was asked to relate his history, described the crime with which he was charged and the events leading to his arrest. Martell acknowledged that Winig did not ask any questions about the court proceedings, about the role of a lawyer, a prosecutor, or about possible defenses. In a declaration, Winig stated he had no recollection of this interview with Odle and no opinion about Odle's competence at trial.

2.      *1983 Trial Counsel Evidence*

Martell testified that "there's no better source of information than the defense counsel." Odle's trial counsel was William Gagen. Martell did not know if Gagen had any memory of the trial or could "recall the events or particular events or conversation[s] . . . ." In fact, he stated it "wouldn't surprise me if [Gagen] doesn't remember things from many years ago."

Gagen did not testify at the feasibility hearing. Martell testified that he reviewed an affidavit provided by Gagen to Odle's counsel in habeas proceedings. He described

3

this statement as "useful" to his evaluation of competency. The trial court held that, without Gagen's testimony, the affidavit would be inadmissible hearsay, but admitted it into evidence for the limited purpose of showing the existence of documentary evidence that might refresh Gagen's recollection at a competency hearing.

3. *1973 Surgery Records*

In 1973, Odle was treated for a traumatic brain injury. Martell testified that he reviewed county medical hospital records involving the surgery performed on Odle after he was injured. A neurosurgeon, Dr. Blum, performed this surgery. At trial, Blum described the size of the piece of brain removed from Odle as comparable to a grapefruit.

Twenty years later, Blum was contacted by the People. Blum described, in a declaration, his current common practice in treating an injury such as the one Odle sustained. He did not describe what his common practice would have been in 1973, when he performed the surgery. In this declaration, Blum stated that he must have been in error when, during the 1983 trial, he testified that he removed a three or four inch cube from Odle's brain. He believed it more likely that he would have removed three to four centimeters from the brain, although he could have removed less and could have removed more. In fact, Blum stated, "frankly, I don't remember."

According to Blum, the size of the brain matter removed was not the best way to determine the effect of any brain damage on Odle. Instead, psychological testing would better reach this issue. Martell "absolutely agree[d]" that such an exam is an important inquiry in terms of determining the psychological consequences of the brain injury and subsequent surgery on Odle.

4. *Odle Neuropsychological Examination*

Prior to the hearing, the People raised the possibility of conducting a psychological examination of Odle. The court responded that "[b]efore we even decide whether there's going to be one [an examination], I would need some indication as to, number one, that the People want it. [¶] Number two, who was going to do it. Number three, what the scope would be, and, number four, I think importantly would be a declaration from the examiner indicating that such an examination would in the

4

examiner's opinion provide evidence that would assist in deferral [sic] and opinion concerning retrospective competency, because absent that fourth element there's no reason for an examination. [¶] Once that's done, then I take it that defense would object to it, and then you would be in court on essentially a discovery motion at which point I would say yea or nay and indicate whether there would be monitoring, and if so, how." The People did not provide the court with information regarding the preliminary matters the court identified nor did the People request that an examination of Odle be conducted.

Martell was asked about the general "availability of psychometric testing, today, in 2004, 21 years out beyond the trial." Martell stated that "we" have "gotten better at it." He also testified that Odle could be examined "with the latest greatest technology here in 2004 that may shine some light back in time to give us insight into his recovery of brain function, and give us a better gauge of how he was functioning 20 years ago based on how he's functioning now."

### 5. *Other Evidence*

Martell characterized the 1980 Winig interview as "one of the strongest pieces of evidence supporting my opinion." He also testified that, in analyzing Odle's competency, "there's collateral information that's less useful but still useful."

Some of this "collateral information" includes letters Odle wrote after trial. Martell singled three out as especially significant. One of these letters discusses Odle's appellate and trial lawyers. Other evidence included portions of the trial transcript in which defense attorney Gagen informed the court that he had discussed a plea agreement with his client and a psychiatric evaluation conducted in 1983 after the trial by a San Quentin psychiatrist. Martell also reviewed records of Odle's stay in jail after his arrest. In 1982, Odle set fire to his cell. After this incident, a jail employee named Dwyer, an unlicensed psychologist, met with Odle at "somewhat regular intervals" and recorded his impressions of Odle during this time. Dwyer's concern was with Odle's "suicidality" and he was "looking for any evidence that he continues to be a danger to himself." Dwyer's function was not to interview Odle about his interactions with his lawyers or his understanding of the case.

At the conclusion of the hearing, the trial court held that a retrospective determination of Odle's competency was feasible. This petition for writ of prohibition or mandate seeking to set aside the trial court's order was then filed.

## III. DISCUSSION

### A. *Standard of Review*

In *People v. Ary* (2004) 118 Cal.App.4th 1016, 1029 (*Ary*), we stated that, in "determining whether a retrospective competency hearing can be held, the court's decision has been viewed as a threshold legal determination, subject to the abuse of discretion standard of review. (See, e.g., *United States v. Renfroe* (D.Del. 1988) 678 F.Supp. 76, 78 [decision on whether a retrospective competency hearing can be held is 'a legal inquiry which "the court must make for itself"']; *Bolius v. Wainwright* (5th Cir.1979) 597 F.2d 986, 988 [trial court's determination of whether to hold retrospective competency hearing is a matter 'left to the discretion of the trial court in each case, subject to appellate review']].)" Similarly, the federal courts have held that the feasibility of a retrospective competency hearing is within the trial court's discretion. (*Wheat v. Thigpen* (5th Cir. 1986) 793 F.2d 621, 630-631.) Therefore, we apply the abuse of discretion standard of review and reject Odle's argument that we should review this issue de novo.

Well established principles govern our application of the abuse of discretion standard of review. An abuse of discretion occurs when a trial court acts "in an arbitrary, capricious or patently absurd manner that result[s] in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) We will reverse the trial court's exercise of discretion only if its decision is "beyond the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)

A decision is beyond the bounds of reason when there is no substantial evidence to support it. (*Shamblin v. Brattain, supra,* 44 Cal.3d at p. 478.) In determining whether substantial evidence supports the decision, we are highly deferential to the trial court's factual findings. Even if we would have made different factual findings, when the evidence is in conflict, we defer to the trial court. (*Ibid.*) Further, "[t]he scope of

6

discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297)

In determining whether the trial court abused its discretion, we first articulate the legal standards that guide the trial court in making a feasibility determination and then consider whether substantial evidence supports the court's finding under the applicable legal standards.

B. *Burden of Proof at Feasibility Hearing*

Odle contends the People have the burden of proving feasibility by clear and convincing evidence. Odle argues that this heightened standard is appropriate because the feasibility determination is essentially a proxy for a harmless error analysis. Odle reasons that, because the trial court's initial failure to hold a competency hearing was constitutional error, the court's feasibility finding should be similar to a harmless beyond a reasonable doubt standard. The trial court concluded that "I do believe that the feasibility burden will be on the People, that that I believe is by a preponderance of the evidence . . . ." We agree. "It is the policy of our state, as expressed by our Legislature, that '[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.' (Evid. Code, § 115.)" (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1466.) Here, a higher burden of proof has not been imposed on the People by any applicable law. Accordingly, the trial court correctly concluded that the appropriate burden of proof is proof by a preponderance of the evidence.

C. *Feasibility Finding*

In considering whether the trial court abused its discretion in finding that it would be feasible to retrospectively determine Odle's competency, we first summarize the general principles that guide courts in determining a defendant's competency to stand trial. We then look at the inquiry a court must make when it determines whether a retrospective competency hearing is feasible.

7

The United States Supreme Court has defined competence to stand trial as a defendant's "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." (*Dusky v. United States* (1960) 362 U.S. 402.) California law similarly provides that a person is incompetent to stand trial "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (Pen. Code, § 1367, subd. (a).[1]) A defendant is presumed competent. (§ 1369, subd. (f).) At a competency hearing, Odle will have the burden of showing, by a preponderance of the evidence that, in 1983, he was incompetent to stand trial. (*Ibid.*)

An important tool in determining whether a defendant is competent is identified in section 1369, subdivision (a). This statute provides that, before a competency hearing is held, the court "shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. . . . The examining psychiatrists or licensed psychologists shall evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder . . . ." (§ 1369, subd. (a); see also *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 482.) Therefore, a fact finder at a competency hearing will have available to it a psychiatric evaluation of the defendant's mental disorder and his ability to understand the nature of the criminal proceedings and to assist his counsel.

This is not the end of the story. In assessing a defendant's competence to stand trial, one of the most crucial pieces of information will be defendant's counsel's own observations of his client's ability to understand the nature of the charges against him and to assist in his case. As one court has explained, "[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable." (*Bryson v. Ward* (10th Cir.1999) 187 F.3d 1193, 1201; see also *Medina v. California* (1992) 505

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

U.S. 437, 450. Although some of these observations will be shielded by the attorney-client privilege, many will not.[2]  Thus, "an attorney may relate nonconfidential conversations with a client if the client did not intend them to be private or privileged. Counsel also may describe such nontestimonial matters as the defendant's physical characteristics, demeanor, and the coherence of defendant's communications (provided that their substance is not disclosed)." (2 ABA Standards for Criminal Justice, *supra,* std. 7-4.8, commentary, p. 7.208.)

Other information that will be useful in assessing competency includes observations of the defendant by the trial court and other witnesses who were present at trial. (*Reynolds v. Norris* (8th Cir. 1996) 86 F.3d 796, 802.)

In California, therefore, a fact finder at a competency hearing will generally make a competency decision after evaluating the statutorily-required psychiatric assessment of defendant's competence, defendant's counsel's admissible observations of his client's competence, and the observations of other people present at the trial, including the trial court, of the defendant's behavior during trial.

A trial court's failure to order a competency hearing when one is warranted by substantial evidence of a defendant's incompetence is prejudicial error per se. Confronted with such an error, the court will generally reverse the judgment in its entirety and remand for a retrial. (See, e.g., *People v. Castro* (2000) 78 Cal.App.4th 1402, 1419-1420.) In *Ary, supra,* 118 Cal.App.4th at pp. 1025-1029, however, we

---

[2] The model provision on competence procedures developed by the American Bar Association provides: "(i) Defense counsel may elect to relate to the court personal observations of and conversations with the defendant to the extent that counsel does not disclose confidential communications or violate the attorney-client privilege. . . . [¶] (ii) The court may properly inquire of defense counsel about the professional attorney-client relationship and the client's ability to communicate effectively with counsel. The defense counsel, however, should not be required to divulge the substance of confidential communications or those that are protected by the attorney-client privilege." (2 ABA Standards for Criminal Justice (2d ed. 1986) std. 7-4.8(b), p. 7.208.)

recognized that, in some situations, this error may be cured by holding a retrospective competency hearing.

In *Ary*, we explained that "it is the rare case in which a meaningful retrospective competency determination will be possible. The inherent difficulty of such a determination, of course, is that there will seldom be sufficient evidence of a defendant's mental state at the time of trial on which to base a subsequent competency determination." (*Ary, supra,* 118 Cal.App.4th at p. 1028.) Nevertheless, in Ary we directed the trial court to "determine whether the available evidence and witnesses are sufficient to permit it to reach a 'reasonable psychiatric judgment' of defendant's competence to stand trial. (*Odle, supra,* 238 F.3d at p. 1089.)" (*Ary, supra,* 118 Cal.App.4th at p. 1029.) We did so because there was medical evidence in the record of Ary's competence at the time of trial. In remanding for a feasibility hearing, we explained that, "[p]ertinent to, but not necessarily determinative of, this issue [of feasibility] is whether the experts who examined defendant in 1999 and 2000 are available and able to render an opinion about defendant's competence to stand trial in 1999 and 2000." (*Ibid.*)

Our opinion in *Ary* is the only reported California appellate decision in which a feasibility hearing has been ordered. And no California court has ever reviewed a trial court's determination of whether such a hearing would be feasible.[3]

This question has, however, been considered by the federal courts. In *Reynolds v. Norris, supra,* 86 F.3d at page 803, the court held that "[w]hen determining whether a

_____

[3] The dissent cites *People v. Castro, supra,* 78 Cal.App.4th 1402 in support of its position. (Dis. opn. of Kline, P.J. at p. 10, fn. 9.) However, in that opinion, the court simply cited cases in which *other* courts refused to order retrospective competency hearings (*Drope v. Missouri* (1975) 420 U.S. 162; *Pate v. Robinson* (1966) 383 U.S. 375, 387; *Dusky v. United States, supra,* 362 U.S. 402) and stated that it, too, would not order such a hearing. In so doing, the *Castro* court did not discuss at all either (1) the factors that go into determining whether a retrospective competency hearing is feasible or (2) the contemporaneous evidence in the record before it regarding competency. *Castro* is, therefore, a slim reed on which to support the dissent's contention that a retrospective competency hearing is unjustified here.

meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. [Citation.] The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available." As another court has put it, the trial court "should consider (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials." (*Clayton v. Gibson* (1999) 199 F.3d 1162, 1169.)

It is not the case, as our dissenting colleague strongly contends, that the absence of a contemporaneous psychological evaluation of defendant's competency makes it infeasible to hold a retrospective competency hearing. (Dis. opn. of Kline P.J. at, e.g., pp. 1, 3, 4, etc.) In *Ary*, we characterized this type of evidence as "[p]ertinent to but not necessarily determinative of" the issue of competency. (*Ary, supra,* 118 Cal.App.4th at p. 1029.) Further, none of the cases cited by the dissent holds that, in the absence of a contemporaneous medical evaluation of competency, a retrospective competency determination will not be feasible. One of the cases on which the dissent relies, *Clayton v. Gibson, supra,* 199 F.3d at p. 1169, lists "factors" for the court to consider in determining whether a meaningful hearing can be held. The *Clayton* court does not state that any one of the four enumerated factors is more important than any other or that any of them cannot, standing alone, suffice. In another federal case, *Wheat v. Thigpen, supra,* 793 F.2d at page 630, the court explained that "[w]hile we recognize that contemporaneous expert medical evidence often provides the most useful evidence for determining whether a meaningful hearing may be held, we have also stated that 'the recollections of non-experts (including the observations of the trial judge) who had the opportunity to interact with defendant during the relevant period may in some instances

11

provide a sufficient base upon which a fact finder may rest his decision that even a belated determination will be accurate." Finally on this point, and as another federal court has held, "[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable." (*Bryson v. Ward* (10th Cir.1999) 187 F.3d 1193, 1201.)

Most pertinent to this issue, in our view, is the Ninth Circuit's 2001 opinion which led us to where we are in this proceeding. That court specifically addressed the feasibility issue *in this case* quite directly: "We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment. [Citation.] Although many years have passed since Odle was convicted and sentenced, the state trial court should be able to 'adduce sufficient evidence' to determine whether Odle was competent to stand trial. [Citation.] Expert witnesses who testified at trial, as well as experts who have since examined Odle, submitted declarations describing Odle's mental state at the time; defense counsel and an investigator submitted declarations describing Odle's behavior during trial proceedings. Moreover, medical records, psychiatric reports and jail records submitted at trial are still available. Given this old and new evidence, 'it is not unreasonable to conclude that a fair retroactive hearing could be . . . conducted.' [Citation.]" (*Odle, supra,* 238 F.3d at pp. 1089-1090.)[4]

We conclude that, no matter how our dissenting colleague may interpret the many other federal appellate cases discussing this issue, the Ninth Circuit's opinion *in this case* should be given the greatest weight unless the evidence in the record before us clearly establishes that the Ninth Circuit's 2001 optimism on the feasibility issue was misplaced. We do not think it does at all.

---

[4] Significantly, the "old and new evidence" to which the Ninth Circuit refers does not include a contemporaneous psychological examination of Odle. Nevertheless, that court concluded, a retrospective competency hearing might be feasible.

12

In support of that conclusion, we note the words of one commentator: "The ability of defendants to consult and interact appropriately with their defense attorneys lies at the heart of the incompetency standard. . . . [D]efense counsel may well be the single most important witness on that dimension of incompetency. A defense attorney not only is in close and continuing communication with a client, but he or she also knows the extent to which presentation of substantive and factual defenses may turn on the client's ability to understand them and assist counsel in advancing them." In sum, "defense counsel['s]. . . testimony may be as important as, or even more important than that of an expert witness . . . ." (2 ABA Standards for Criminal Justice, *supra,* std. 7-4.8, commentary, p. 7.208.)

In short, a court may order a retrospective competency hearing be held if it concludes there is "sufficient evidence on which a 'reasonable psychiatric judgment' of defendant's competence to stand trial can be reached." (*Ary, supra,* 118 Cal.App.4th at p. 1029.) We will uphold the trial court's decision so long as there is substantial evidence in the record to support the court's conclusion.[5]

D.    *Feasibility Hearing*

Following a thorough summary of the evidence on which it was and was not relying and its rationale for so doing, the trial court concluded that a retrospective competency hearing would be feasible.

---

[5] In their return to our order to show cause, the People have attached three Exhibits lettered E through G. These exhibits consist of declarations that appear to have been submitted in an earlier habeas action brought by Odle. There is no indication these documents were ever before the trial court in this matter and, therefore, we do not rely on them.

First, the court described Martell as "very credible in his testimony."[6] The court, however, stated that evidence "contemporaneous to the crime, but not to the trial" was only "tangentially relevant." Therefore, the court appears to have concluded that Odle's 1980 interview with Dr. Winig, which was contemporaneous to the crime but not to the trial, was of limited relevance.[7] Instead, the court stated, "the things that I find more compelling on the issue of feasibility have to do with what if any information is available that was contemporaneous to the trial."

The court identified the testimony of defense attorney Gagen as one "rational tool[] of decision-making available to us." The court also observed that, although Gagen had not testified, he "is capable of testifying concerning observations, and his observations and opinions and conclusions concerning competence are definitely rational tools of decision-making available to us."

---

[6] Our dissenting colleague disagrees and effectively disputes Dr. Martell's credibility. (See dis. opn. of Kline, P.J. at pp. 20-22.) We respectfully note that: "A reviewing court cannot substitute its evaluation of a witness's credibility for that of the fact finder." (*People v. Garcia* (1993) 17 Cal.App.4th 1169, 1183.) As our Supreme Court has repeatedly reminded us, ""it is the exclusive province of the trial judge or jury to determine the credibility of a witness . . . ."" (*People v. Barnes* (1986) 42 Cal.3d 284, 303; see also, to the same effect: *In re Arturo D.* (2002) 27 Cal.4th 60, 77; *Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153, 1166; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1339; *People v. Cantrell* (1992) 7 Cal.App.4th 523, 538.) This rule applies also to expert witnesses. (See, e.g., *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 258; *People v. Mercer* (1999) 70 Cal.App.4th 463, 466-467; *In re Katrina W.* (1994) 31 Cal.App.4th 441, 447. There is nothing in *People v. Lawley* (2002) 27 Cal.4th 102, 132, cited in petitioner's filings with this court and by our dissenting colleague (dis. opn. of Kline, P. J. at p. 21-22) that is even slightly to the contrary.

[7] In his petition, Odle argues that the court erred in admitting this interview for the purpose of determining feasibility because, at trial, the court ruled it was involuntary and, therefore, inadmissible for any purpose at trial. In our view, this interview would be admissible in the context of a feasibility hearing. (See, generally, *Baqleh v. Superior Court, supra,* 100 Cal.App.4th at pp. 502-503 [defendant at a competency hearing can be compelled to submit to psychiatric evaluation; results of evaluation cannot be used in criminal proceeding under rule of immunity].) Nevertheless, even if the trial court erred in admitting this evidence, any such error was harmless because of the limited weight the trial court gave this evidence in reaching its conclusion.

14

In addition, the court stressed that it would be possible to determine, using current medical technology, the impact of Odle's 1973 brain surgery on his ability to function at trial. The court stated that Odle could be examined prior to a retrospective competency hearing and that this examination would reveal meaningful information. The court reasoned: "So as of today, it appears to me that today's condition of the brain is essentially the same, that's what the testimony is, and that testing can be done to see if there is an impairment such that the missing brain matter would render him -- would have rendered him incompetent at the time of trial." [8]

The court also acknowledged that such an examination might not be possible, but reserved this issue for the competency hearing. The court stated, "if there is additional evidence, I may be willing to look at it. And that has to do with whether some expert may say that because of the medication, we can no longer make that assessment. And I have no way of knowing that, and it would be sheer speculation for me to make that leap today, absent some competent medical testimony that that is the case."

The court also found contemporaneous documents and trial testimony significant in reaching its conclusion. Specifically, the court pointed to a letter dated January 9, 1984, from Odle in which he discussed his trial lawyer and appellate lawyer. In this letter, Odle "indicates that he clearly understood at that point what was going on with the appellate process, and that is virtually contemporaneous with the trial." The court also identified a reference during the trial in which attorney Gagen stated he had discussed a plea agreement with Odle. The court pointed out that "[t]he fact that this appeared to

---

[8] In reaching this conclusion, the court referred to the "largest, most significant issue" identified by the Ninth Circuit in *Odle, supra,* 238 F.3d 1084: Whether there had ever been an evaluation of the consequences of the operation in which brain matter was removed after Odle's serious head injury. In *Odle*, the court compared the amount of brain removed to a "grapefruit" (*id.* at p.1089), a characterization that was discussed (and disputed) at the feasibility hearing. The trial court concluded that the testimony it found most compelling demonstrated that "it is not significant necessarily, what the size of the brain matter was that was removed. What is significant is the effect of the accident itself and the operation on subsequent conduct and functioning."

have taken place without any concerns raised about Mr. Odle's competency leads me to believe that there is available to us additional contemporaneous evidence of his competency through Mr. Gagen's testimony." The court also noted that "[t]here were various records around the time of the trial that had to do with Mr. Odle's psychiatric condition. He also had statements in writing that he did, both pre and post trial. Shortly after the sentencing, he had -- there were psychiatric records from San Quentin that I consider virtually contemporaneous."

The court also found significant ongoing contact between Odle and Patrick Dwyer, the psychologist assigned to monitor Odle while he was in jail awaiting trial. These contacts are memorialized in psychiatric records kept between September 1982 and June 1983. The court considered these records "significant" and pointed out that they would be available at a retrospective hearing.

The trial court properly based its feasibility finding, in significant part, on evidence courts consistently have identified as crucial to determining a defendant's competency: (1) defendant's counsel's own observations of his client and (2) a psychiatric evaluation of defendant's competency. However, it is apparent from the record that the trial court misunderstood the showing the People were required to make in order to establish that these two pieces of evidence *would be available* at a retrospective competency hearing. Put more broadly, the court's statements reflect a misunderstanding of the nature and quantum of evidence that was required for the People to sustain their burden of proof.

In making its feasibility finding, the court assumed that the People's burden could be met by showing that Odle's trial attorney was available to testify at a competency hearing, *rather than by showing he would be able to provide meaningful information regarding his former client*. Certainly, this would not be an unreasonable assumption to make in a present competency hearing. In that context, a defense attorney's availability is virtually synonymous with his ability to describe his non-privileged interactions with his client with sufficient particularity to provide useful information in making a competency determination. This is not, however, a reasonable assumption to make with

16

regard to a retrospective competency hearing, particularly where, as here, more than twenty years have elapsed since defense counsel observed his client at trial.

The record before us thus contains insufficient evidence as to whether Gagen has, today, any meaningful recollection of his interactions with his client at the 1983 trial.[9] For example, although Martell testified that "there's no better source of information than the defense counsel," he did not know if Gagen had any memory of the trial or could "recall the events or particular events or conversation[s]." Similarly, although the People initially sought Gagen's testimony, after defendant objected, apparently on attorney-client privilege grounds, the matter was not pursued and Gagen did not testify.

The only other evidence of Gagen's ability to recall the 1983 trial is a 1991 affidavit he signed for use in the federal habeas proceedings that ultimately led to this hearing. This affidavit describes, among other things, Gagen's observations regarding his client's demeanor and behavior at the 1983 trial. The trial court ruled that the affidavit was admissible for the limited purpose of showing the existence of documentary evidence that might refresh Gagen's recollection at a competency hearing. In so ruling, and as noted earlier, it permitted Martel to consider that affidavit in reaching his opinion. The People's burden, however, was not to show that Gagen's recollection "might" be refreshed. Rather, the People were required to show that Gagen could provide meaningful testimony that would assist a trier of fact in determining whether his client was competent in 1983.

We emphasize that this burden is not a heavy one. As we have noted earlier, Gagen can testify at the feasibility hearing as to the extent of his memory of non-privileged matters that are relevant to a competency determination. Once he does so, the

---

[9] We do not suggest, of course, that Gagen will be unable to recall this information. Rather, our point is that the trial court misunderstood the People's legal burden. The People's burden was *not* to establish simply that Gagen was available to testify, but that he was available to testify *in a meaningful way.* By establishing this on remand, the People may well be able to satisfy the fourth prong set forth in *Clayton v. Gibson, supra,* 199 F.3d at p. 1169, cited by our dissenting colleague. (Dis. opn. of Kline, P.J. at pp. 4-5.)

court will then be able to determine whether this testimony constitutes a useful tool in making a retrospective competency determination.

Secondly, the court's feasibility finding rests in significant part on the conclusion that a present psychiatric evaluation of Odle could be conducted and that this evaluation would provide useful evidence on the issue of Odle's competency in 1983. Here, too, the court understood the People's burden to be satisfied upon a showing that Odle was available for such an evaluation and, if there was any doubt about whether such an examination could be conducted, the burden was on the defense to show this examination was not possible. We do not agree. Given the passage of time since Odle's trial, it is not unreasonable for the People to be required to show that Odle could participate in a meaningful psychiatric evaluation, which would include showing that there was nothing about his current mental health that would preclude such an evaluation. Because the trial court misunderstood the People's burden, there is very little evidence in the record that Odle currently could be subjected to a meaningful psychiatric evaluation. Therefore, we must remand this matter to the trial court to reconsider its earlier ruling in light of the evidence already considered by it and the evidence received after remand.

Regarding the propriety of a remand, our dissenting colleague suggests that the People "waived" the issue of whether relevant testimony from Gagen was available by not calling him as a witness at the hearing. (Dis. opn. of Kline, P.J. at pp. 13-16.)

In the first place, the issue of whether a party below will be deemed to have waived an issue for purposes of appellate review is a matter ultimately left to the appellate court's discretion. (See *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 132; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167; see also 1 Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2004) ¶ 8:277.) Secondly, the fact that Gagen was never called as a witness by the People was apparently at least partly due to the objections of Odle's counsel to the admissibility of any such testimony. As petitioner states in his petition: "Mr. Odle opposed the application [of the People to be allowed to call trial counsel as a witness] and sought limitation to what is permissible consistent with the attorney-client privilege."

Then, early in the hearing, when that issue was before the court for argument and determination, petitioner's counsel urged the court that it "be tabled until we resolve some more fundamental issues about where we are, where we're going, and what it's going to look like." The court ultimately agreed to delay resolution of petitioner's counsel's objections to Gagen's testimony, after which that resolution apparently got lost in the proverbial shuffle.

Particularly in view of (1) our foregoing clarification of both the pertinence and necessary substance of any testimony by Gagen and (2) the fact that the issue of petitioner's competence to stand trial was not even raised until almost a decade after his trial and conviction, we clearly have the discretion to hold, and do hold, that there has been no waiver by the People of their right to call Gagen as a witness at a reopened hearing.

Further, even in the ordinary trial-judgment-appeal context, there are no substantive obstacles to a remand to receive such testimony. As our Supreme Court has held: "It is a firmly established principle of law that '[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.'" (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776; see also, to the same effect: *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801; *Barmas, Inc. v. Superior Court* (2001) 92 Cal.App.4th 372, 376; *Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1477; *Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4th 1541-1575-1576; *Haycock v. Hughes Aircraft Co.* (1994) 22 Cal.App.4th 1473, 1496; 2 Eisenberg, et al., Cal Practice Guide: Civil Appeals & Writs (The Rutter Group 2004) ¶¶ 11:71-11:72.)

By way of example, in remanding a case to the trial court for reconsideration in light of its interpretation of the applicable corporate law, Division One of this district stated: "[I]n view of its previous determinations, the court may deem it necessary or advisable to receive additional evidence and should not be foreclosed from so doing. Under the circumstances it is appropriate to remand the cause with directions to the trial

19

court to make adequate findings on all issues, based on the evidence now in the record and such additional evidence as it may hereafter receive." (*England v. Christensen* (1966) 243 Cal.App.2d 413, 435.) [10] Surely this principle is even more applicable where, as here, we are reviewing via a writ proceeding a trial court *order* issued after a hearing designed to determine whether a future hearing is feasible.[11]

Because we are remanding this matter, we will also discuss one other evidentiary issue. Just as there is very little evidence of Odle's suitability for a meaningful current psychiatric examination, there is also very little evidence that such an examination could be used to evaluate Odle's competency in 1983.[12] Earlier in the proceedings, when the issue was raised of whether such an evaluation could be conducted, the trial court indicated it understood the People to have at least the burden of showing that an evaluation conducted in the present could meaningfully show Odle's competency in 1983. The court stated, "I think importantly would be a declaration from the examiner indicating that such an examination would in the examiner's opinion provide evidence that would assist in deferral [sic] and opinion concerning retrospective competency, because absent that fourth element there's no reason for an examination." No such

---

[10] At oral argument, both counsel for petitioner and the People agreed that this remedy is permissible. Further, counsel for petitioner did not suggest, much less argue, that this procedure is inappropriate because of any "waiver" by the People.

[11] For example, in administrative mandamus proceedings under Code of Civil Procedure section 1094.5, a trial court may—and indeed often should—remand to an administrative body to allow it to make "adequate findings" via "further proceedings." (See, e.g., *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 898-900.) This and much other procedural law regarding writ proceedings suggests that directing a remand for the taking of additional evidence is neither unusual nor controversial in such proceedings.

[12] In fact, when discussing this issue, the court stated that "No one suggests that we use today's conditions as evidence of the 1983 condition." Later, however, the court suggested the opposite: "So as of today, it appears to me that today's condition of the brain is essentially the same, that's what the testimony is, and that testing can be done to see if there is an impairment such that the missing brain matter would render him -- would have rendered him incompetent at the time of trial."

declaration was provided. Instead, the only expert testimony on this issue is a statement by Martell about the general "availability of psychometric testing, today, in 2004, 21 years out beyond the trial." Martell stated that "we" have "gotten better at it." He also testified that Odle could be examined "with the latest greatest technology here in 2004 that may shine some light back in time to give us insight into his recovery of brain function, and give us a better gauge of how he was functioning 20 years ago based on how he's functioning now." Although he suggested such an examination could show how Odle functioned 20 years ago, Martell did not state that such an examination could shed light on the issues relevant to a competency determination. On remand, the People should be required to address this issue.

Our dissenting colleague suggests that, in remanding this matter, we have effectively concluded that a retrospective competency hearing is feasible. This is not correct. Neither we nor the trial court can evaluate, from this incomplete record, whether defendant's competency can be retrospectively determined. This is because potentially significant evidence bearing on this question was not presented to the trial court. Thus, we do not know whether defendant's counsel can testify in a meaningful way regarding defendant's competency to stand trial. Nor do we know if it is indeed the case, as the People, Martell and the trial court assumed, that defendant's current psychological state can be discerned through testing and whether such testing could be considered a proxy for his mental state at trial. Therefore, the trial court could not properly determine whether there is sufficient evidence to permit a "reasonable psychiatric judgment" of defendant's competence to stand trial. (*Odle, supra,* 238 F.3d at p. 1089.) In such a situation, remand for further proceedings is appropriate.[13]

---

[13] Our dissenting colleague suggests that we are holding the trial court "responsible for the failure of the People's evidence." (Dis. opn. of Kline, P. J. at p. 2.) We are not at all; we are simply holding that the trial court erred by not requiring the People to produce, at this stage of the proceeding, *all* of the evidence required in a difficult and unique proceeding such as this.

This result is not unreasonable. First, the delay in reaching the issue of competency is due in part to the fact that almost a decade elapsed before petitioner even raised the issue of his competence. Given this delay, we see no reason why the People should not be afforded the opportunity to fully and properly litigate the issue of feasibility. Second, as we noted earlier, no reported decision has considered whether a California trial court has properly conducted a feasibility proceeding. We are not so sanguine as to think that a feasibility hearing is either routine or simple. The trial court conducted extensive hearings and yet nevertheless incorrectly assumed that feasibility could be based on the fact that a witness would be available to testify. We have now made clear that a feasibility finding must be based on more than a witness's availability; it must be based on evidence of whether that witness is able to provide meaningful testimony on the issue of defendant's competency at trial. Similarly, the court assumed that a current psychological examination of defendant could be conducted and could shed light on his condition at trial. The court incorrectly concluded that the presentation of this evidence could be deferred to the competency hearing. It cannot. The court must carefully scrutinize, at the feasibility hearing, the proposition that defendant's psychological condition is such that a current psychological examination is an adequate proxy for a contemporaneous examination. Nor may the examination itself be deferred until the competency hearing. The court cannot determine whether it is feasible to hold a retrospective hearing without knowing the precise nature of the evidence available to defendant at the hearing. For this reason, the question of whether a meaningful psychological examination of defendant can be conducted must be answered at the feasibility hearing.

We agree with our colleague that, at this point, the record does not support the trial court's conclusion that defendant's competence can be evaluated retrospectively. We are also aware that such an evaluation is necessarily difficult. However, the trial court has been ordered to consider whether this remedy is feasible. In making that critical determination, all possible evidence should be examined, especially the testimony of the

admittedly available witness who had the most significant interaction with Odle at trial, his attorney. Our disposition ensures that this determination will be made correctly.

## IV. DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to vacate its order finding that a retrospective competency hearing is feasible. The cause is remanded to the trial court with instructions to reopen the feasibility hearing and conduct further proceedings on two issues: (1) whether Odle's trial counsel, William Gagen, has sufficient recollection of non-privileged matters so as to provide affirmative evidence at a retrospective competency hearing on the question of whether Odle understood the nature of the proceedings and was able to assist counsel in the conduct of a defense in a rational manner; and (2) whether Odle is able to participate in a meaningful psychiatric evaluation and whether such a current evaluation would assist a fact finder at a retrospective competency hearing in determining Odle's competency to stand trial in 1983. After conducting these proceedings and considering the evidence received both then and previously, the court should reevaluate whether a retrospective competency hearing is feasible as to petitioner.

_____

Haerle, J.


I concur:


_____

Lambden, J.


A109985, *James Richard Odle v. Superior Court of Contra Costa County*

24

**In re Odle**

Concurring and dissenting opinion of Kline, P.J.

I concur in the granting of the petition but disagree with the analysis employed by the majority for doing so. I also disagree that the matter should be remanded for the limited purposes of securing two pieces of evidence the People did not produce at the feasibility hearing. In the circumstances of this case, that evidence could not as a matter of law compensate for the absence of contemporaneous evidence and the passage of 23 years. For that reason I would grant the writ unconditionally. Accordingly, I respectfully dissent from the limited remand.

I.

After ruling that a retrospective determination of Odle's competency to stand trial 23 years ago was feasible, the trial court ordered a competency hearing, which has not yet taken place. In response to defense counsel's claim that no American court has ever found a retrospective determination feasible where, as here, no contemporaneous medical evidence of competency exists, the trial court made clear that its ruling was based on the assumption that two pieces of evidence not produced at the feasibility hearing—the testimony of Odle's trial counsel, William Gagen, and a present mental evaluation of Odle—would be produced at the competency hearing, indicating the court's belief that such evidence could compensate for the absence of contemporaneous medical evidence.

The People waived the right to produce the two pieces of evidence in question and, in any case, that evidence could not make up for absence of contemporaneous medical evidence. I agree and vote to grant the petition for those reasons.

The majority grants the petition on a different ground, which is neither advanced by Odle nor addressed by the People, namely, "that the trial court misunderstood, in two significant respects, the type of evidence the law requires the People to adduce in order to sustain their burden of proof." (Maj. opn., *ante*, at p. 2.) More specifically, the majority says, "the trial court misunderstood the showing the People were required to make [at the feasibility hearing] in order to establish that these two pieces of evidence [i.e., the

1

testimony of William Gagen and a present mental evaluation of Odle] *would be available at a retrospective competency hearing."* (Maj. opn., *ante*, at p. 16.)[1] My colleagues thus attribute to the trial court the People's failure to show (1) that Gagen "would be able to provide meaningful information regarding his former client" (maj. opn., *ante*, at p. 16) and (2) that "Odle currently could be subjected to a meaningful psychiatric evaluation"[2] (maj. opn., *ante*, at p. 18) (i.e., an evaluation that would reliably indicate whether he was competent to stand trial 23 years ago).

It is certainly true that the trial court misunderstood the quantum of evidence necessary for the People to sustain their burden, as that was obviously the reason the court erroneously found that the People satisfactorily established the feasibility of a retrospective competency determination. *But that erroneous finding had nothing to do with the People's failure to produce the necessary evidence.* The spurious theory that the trial court was somehow responsible for the failure of the People's evidence,[3] which is unambiguously refuted by the record and not raised by any party, is conjured by the majority solely for the purpose of providing a basis upon which to remand this case, and provide the People an unsought opportunity to provide evidence they could have but

---

[1] Implicit in the majority opinion is the conclusion, with which I agree, that the necessary evidence cannot be deferred until the competency hearing, at which, unlike the feasibility hearing, the burden of proof lies with Odle.

[2] "A 'meaningful' determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings." (*Reynolds v. Norris* (8th Cir. 1996) 86 F.3d 796, 802, citing *U.S. ex rel. Bilyew v. Franzen* (7th Cir 1988) 842 F.2d 189, 192.)

[3] My colleagues dispute the validity of this assertion. They say "[w]e are not at all [holding the trial court responsible for the failure of the People's evidence]; we are simply holding that the trial court erred by not requiring the People to produce, at this stage of the proceeding, *all* of the evidence required in a difficult and unique proceeding such as this." (Maj. opn., *ante*, at p. 21, fn. 13.) This explanation seems to me to concede, not refute, the truth of my statement. My colleagues never explain why, if they feel the trial court was not responsible, the People's failure to produce "the evidence required" should entitle them to another opportunity to try to do so.

decided not to present, and which they have always maintained is "unnecessary" to show feasibility.

So far as the parties are concerned, the issue in this case is not that manufactured by the majority, but the sufficiency of the evidence of feasibility presented by the People.[4] My colleagues and I agree the evidence is insufficient. Our disagreement relates to whether the People should be provided another opportunity to present the two pieces of evidence at issue. For two reasons, I believe the People should not be provided another opportunity to provide this evidence, entirely aside from the fact they continue to maintain it is unnecessary. First, the People waived the right. Second, in the circumstances of this case, Gagen's testimony and a present psychiatric evaluation of Odle cannot compensate for the undisputed absence of any contemporaneous evidence of Odle's competence to stand trial 23 years ago.

II.

Preliminarily, it is necessary to explain why " 'retrospective determinations of whether a defendant is competent to stand trial or plead guilty are *strongly disfavored.*' " (*Wilkins v. Bowersox* (8th Cir. 1998) 145 F.3d 1006, 1014, quoting *Weisberg v. State of Minnesota* (8th Cir. 1994) 29 F.3d 1271, 1278, italics added; accord, *Williams v. Woodford* (9th Cir. 2002) 384 F.3d 567, 610.) As we explained in *People v. Ary* (2004) 118 Cal.App.4th 1016, retrospective competency determinations are feasible only in "rare circumstances" (*id.* at p. 1029) because the record will "seldom contain useful contemporaneous information regarding a defendant's mental state *at the time of trial* and his ability, *at that time,* to understand the nature of the proceedings and assist in his

---

[4] Odle's writ petition, which we denied over my dissent, and the petition for review he filed in the Supreme Court, which was granted, raised the same three issues: (1) whether the record contains sufficient reliable evidence that a retrospective competency hearing is feasible; (2) whether the burden of proof may be placed on defendants at retrospective competency hearings; and (3) whether an involuntary confession may be used at such hearings. The briefs filed in opposition by the Attorney General are also confined to these issues. I believe it is necessary to address only the first issue.

3

defense." (*Id.* at p. 1028, italics added.) It is primarily for this reason, which is particularly salient where a significant amount of time has passed, that the United States Supreme Court and many other federal courts and at least one California court have repeatedly "declined to permit a retrospective competency hearing after reversing a conviction because of the failure to hold such a hearing originally." (*Ibid.*, citing *People v. Castro* (2000) 78 Cal.App.4th 1402, 1419-1420.) The United States Supreme Court has addressed the issue on three occasions and on all of them declined to authorize a retrospective competency determination. (*Drope v. Missouri* (1975) 420 U.S. 162, 183; *Pate v. Robinson* (1966) 383 U.S. 375, 387; *Dusky v. United States* (1960) 362 U.S. 402.) The passage of a lengthy period of time and the unavailability of contemporaneous medical evidence are dominant considerations not only because they show that a retrospective determination is infeasible, but because they would render it almost impossible for the defendant to carry his burden of showing incompetency in the event a nunc pro tunc determination were deemed feasible.[5]

Federal courts have grappled with this issue for many years. Based on an analysis of federal case law, the Tenth Circuit has usefully identified the four factors found by federal courts to bear most significantly on the feasibility of a meaningful retrospective competency determination: "(1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials." (*Clayton v. Gibson*

---

[5] The trial court was in my view far too indifferent to the nature of the unjustified burden it imposed on Odle. After defense counsel emphasized that Odle would have the burden of proof at a competency hearing, and insisted that the absence of contemporaneous evidence would make it impossible for him to prevail at a competency hearing, the court dismissively observed: "I cannot deny a retrospective competency hearing simply because of a possibility, however remote, that something would have been available that could have proven [Odle] incompetent."

(10th Cir. 1999) 199 F.3d 1162, 1169 (*Clayton*); *McGregor v. Gibson* (10th Cir. 2001) 248 F.3d 946, 962-963.)[6]

The majority downplays the *Clayton* guidelines, maintaining they do "not state that any of the four enumerated factors is more important than any other or that any of them cannot, standing alone, suffice." (Maj. opn., *ante*, at p. 11.) I read *Clayton* differently because, considered in the light of the case law and reason, it seems to me apparent that the factors *were* listed in descending order of importance. But it really does not matter. Whatever the relative importance *Clayton* may ascribe to the enumerated factors, the guidelines can only mean that a retrospective hearing cannot be deemed feasible *when all four factors point in that direction;* that is, the passage of time is great and that problem is not ameliorated by the presence of any of the three other factors. That is precisely the case here.

The passage of time in this case, now nearly 23 years, exceeds by far that presented in any relevant case decided by an American court. In *Pate v. Robinson, supra,* 383 U.S. 375 and *Drope v. Missouri, supra,* 420 U.S. 162, the Supreme Court considered the passage of merely six years as a reason not to permit a retrospective competency determination. In *McGregor v. Gibson, supra,* 248 F.3d 946, in which a retrospective determination was also barred, 11 years had passed. In *People v. Ary, supra,* 118 Cal.App.4th 1016, where we allowed a retrospective hearing, the defendant had been tried only *four* years earlier, little more than one-sixth the amount of time that has passed in the present case. The extraordinary amount of time that has passed in this case is not only bound to significantly impair the recollection of those who interacted with Odle at the time of trial and are still alive and available to testify, but also to render Odle's

---

[6] This formula has also been applied in other circuits. For example, citing a Fifth Circuit opinion, the Eighth Circuit has stated than in "determining whether a meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records." (*Reynolds v. Norris, supra,* 86 F.3d at p. 803.)

present mental state an even more unreliable basis for assessing his competency at the time of trial than would ordinarily be the case.  The passage of so many years would also make it virtually impossible for Odle to sustain his burden of showing incompetency if a retrospective determination were deemed feasible.

As is often stated, the passage of time is a surmountable obstacle *only* in cases in which the second *Clayton* factor is present, that is, sufficient contemporaneous medical information is available.  (*Reynolds v. Norris, supra*, 86 F.3d at p. 803 ["passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available"]; *Williams v. Woodford, supra*, 384 F.3d at pp. 609-610; *U.S. ex rel. Bilyew v. Franzen, supra*, 842 F.2d 189 at p. 193; see also *Clayton, supra*, 199 F.3d at p. 1169, cert. denied, 531 U.S. 838; *Wilkins v. Bowersox, supra*, 145 F.3d 1006, 1014-1015, cert. denied, 525 U.S. 1094; *Cremeans v. Chapleau* (6th Cir. 1995) 62 F.3d 167, cert. denied, 516 U.S. 1096; *United States v. Mason* (4th Cir. 1955) 52 F.3d 1286, 1293; *Moran v. Godinez* (9th Cir 1994) 57 F.3d 690, 695-696, cert. denied, 516 U.S. 976; *United States v. Makris* (5th Cir. 1976) 535 F.2d 899, 904.)  Indeed, the Sixth Circuit takes the position that a retrospective determination may satisfy the requirements of due process *only* if "it is based on evidence related to observations made or knowledge possessed *at the time of trial*."  (*Cremeans v. Chapleau, supra*, 62 F.3d at p. 169, italics added.)[7]

---

[7] The sole case I am aware of in which a retrospective determination was deemed feasible despite the absence of contemporaneous medical information is *Wheat v. Thigpen* (5th Cir. 1986) 793 F.2d 621, 631, rehearing denied, 797 F.2d 977, certiorari denied 480 U.S.930.  The court held that notwithstanding the absence of such information, a meaningful retrospective determination could be made because the trial court had before it the testimony of the three judges who participated in the defendant's trial, who described their observations of and interactions with him, as well as the observations of "numerous" other individuals who observed him at the time of trial, "including police officers, jail officials, penitentiary officials, Wheat's defense counsel, and the district attorney who prosecuted Wheat." (*Id.* at p. 630.)  In addition, the transcript of the trial "included several discussions between the court and Wheat, the testimony of numerous lay witnesses who observed Wheat contemporaneously to trial, and the opinions of several experts." (*Id.* at p. 631.)  As will be seen, there is in this case no such alternative evidence compensating for the absence of contemporaneous medical

6

Because it is a given that contemporaneous medical evidence is unavailable in this case, we must therefore look to see whether either of the two remaining *Clayton* factors are present; that is, whether "any statements by the defendant in the trial record" shed light on his competency, or whether competency can be evaluated on the basis of the testimony of others "who were in a position to interact with [the] defendant before and during trial." (*Clayton, supra*, 199 F.3d at p. 1169.)

Neither of these two factors is present here.

The record does not show, and the People do not contend, that Odle's statements or conduct at trial (at which he did not testify and was notably passive) shed any light on his mental competency at that time.

Furthermore, putting aside for the moment William Gagen, whose declaration was received by the trial court and is discussed presently, no person in a position to interact with Odle at the time of trial is now available to testify; almost all are either dead or their whereabouts are unknown. This includes Odle's original attorney, Patrick Meistrell, who represented him over a period of years, and that attorney's investigator, petitioner's parents (who visited him frequently during this period), the district attorney's investigator (who interviewed petitioner and others who knew him), the lead Sheriff's Department investigator (who also interviewed petitioner), the deputy sheriff present at the time petitioner collapsed and was hospitalized in 1980, hospital personnel who treated petitioner shortly after his arrest, and Dr. Benjamin Blassingille, a neurologist employed by the Department of Corrections (whose mental evaluation of petitioner conflicted with that of Dr. Martell). Nor does the record establish that the trial judge is available to testify. Most of the contemporaneous law enforcement records, including numerous taped interviews of persons who knew petitioner and/or witnessed his conduct, are also missing.

---

information. Because the trial in this case occurred 23 years ago (not just six, as in *Wheat*), almost all of those who observed and interacted with Odle at the time of trial are dead or unavailable. Furthermore, since Odle did not testify, the trial transcript provides no help in this case.

In short, each and every one the four *Clayton* factors unquestionably demonstrate that a retrospective determination of petitioner's competency to stand trial is not feasible.

It may be true, as the majority says, that no court has explicitly stated that a retrospective competency hearing may *never* be held in the absence of contemporaneous medical evidence, but the cases suggest as much. (See, e.g., *Cremeans v. Chapleau, supra,* 62 F.3d at p. 169.) It is clear, however, that in no case remotely similar to this one has a retrospective competency determination ever been deemed feasible in the absence of any contemporary medical evidence of competency. Furthermore, Odle does not take the position that the absence of contemporaneous medical evidence *necessarily* renders a retrospective competency hearing infeasible; nor do I take that position. It is possible to conceive of a situation in which a retrospective hearing is feasible despite the absence of such evidence because the passage of time was extremely short, the defendant took the stand and his testimony sheds light on his mental state, and the trial judge, counsel and others who interacted significantly with the defendant are available to testify. (See, e.g., *Wheat v. Thigpen, supra,* 793 F.2d 621, discussed, *ante,* at pp. 6-7. fn..7.) That is certainly not the case here, however.

The availability of contemporaneous competency evaluations is unquestionably the regnant factor in determining the feasibility of a retrospective competency hearing. For example, in *de Kaplany v. Enomoto* (9th Cir. 1976) 540 F.2d 975, a frequently cited case, the Ninth Circuit approved a retrospective hearing conducted during federal habeas proceedings largely because the government had established that "several key expert witnesses whose testimony was featured at the trial were able to attend the hearing, as was defendant's trial counsel. Additionally, many pages of expert testimony, prepared for the trial and addressed to the issue of defendant's competency at the time of trial, were available at the hearing. In light of the presence of these key evidentiary items, it is not unreasonable to conclude that a fair retroactive hearing could be and was conducted." (*Id.* at p. 986, fn. 11.) A retrospective hearing was also feasible in *Sieling v. Eyman* (9th Cir. 1973) 478 F.2d 211, 215-216, because in that case three psychiatrists had examined the defendant at the time he entered a guilty plea. On the ground that the trial

8

court had inquired into the defendant's competence at the time it accepted his plea, the *Sieling* court distinguished the case from *Pate v. Robinson, supra,* 383 U.S. 375.  (See also *Darrow v. Gunn* (9th Cir. 1979) 594 F.2d 767, 772-773.)

The unusual availability of contemporaneous evidence of competency was also the reason we concluded a retrospective hearing was feasible in *People v. Ary, supra,* 118 Cal.App.4th 1016.  *Ary* presented the "rare circumstances" in which a retrospective competency hearing might be feasible, we said, "only" because of the "highly unusual" fact that during pretrial proceedings on the defendant's competence to waive his *Miranda* rights and the voluntariness of his confession, "extensive expert testimony and evidence was proffered regarding defendant's mental retardation and his ability to function in the legal arena," much of which would be relevant in a competency hearing.  (*Id.* at p. 1029.)

It is worth noting that courts have found that retrospective competency hearings were *not* feasible even in cases in which some contemporaneous medical evidence was available.  For example, in *Chavez v. United States* (9th Cir. 1981) 641 F.2d 1253, it was held that a retrospective hearing could not be held because, though there were three contemporaneous psychiatric reports on the defendant, and a history of his antisocial behavior and treatment for mental illness had been submitted to the court in connection with his guilty plea, the psychiatric reports did not adequately address the defendant's competence to plead guilty.  (*Id.* at pp. 1260-1261.)[8]  A retrospective competency hearing was also deemed infeasible in *Tillery v. Eyman* (9th Cir. 1974) 492 F.2d 1056, even though at the time of trial defense counsel and a court-appointed psychiatrist "related facts which indicated that Tillery was unable to aid in his own defense, and [the psychiatrist] even suggested that Tillery be sedated during trial."  The Court of Appeals

---

[8] After the government successfully moved to expand the record to include additional evidence—the transcripts of the competency and guilty plea proceedings—the Ninth Circuit granted the government's motion for rehearing, withdrew its original opinion, and issued another opinion holding that the additional evidence was sufficient to render a retrospective competency hearing feasible.  (*Chavez v. United States* (9th Cir. 1981) 656 F.2d 512.)

9

concluded that the lapse of more than six years made it too difficult to retroactively determine the defendant's competence from the cold record. (*Id.* at p. 1059.)[9]

If a retrospective hearing was unjustified in *Chavez* and *Tillery*, it is a fortiori unjustified in this case. The idea that a retrospective determination may be feasible in the circumstances of this case makes a mockery of our statement in *People v. Ary, supra,* 118 Cal.App.4th 1016 that, because "useful contemporaneous information regarding a defendant's mental state at the time of trial" will seldom be available, a meaningful retrospective competency determination will be possible only "in the rare case." (*Id.* at p. 1028.) If a retrospective determination is feasible in the circumstances of this case—in which there in absolutely no contemporaneous information, 23 years have passed since the time of trial, the defendant did not testify, and almost all of those who interacted with him at the time of trial are dead or unavailable—such determinations should be feasible in many cases and perhaps even most.

The majority suggests that the Ninth Circuit's 2001 opinion in this case (*Odle v. Woodford, supra,* 238 F.3d at pp. 1089-1090) indicates its belief that a retrospective determination of Odle's competence to stand trial is feasible despite the absence of any contemporaneous evidence of competence. (Maj. opn., *ante,* at p. 12.) My colleagues point out that the "old and new" evidence of Odle's mental state, to which the Ninth Circuit referred, "does not include a contemporaneous psychological examination of Odle," so the Ninth Circuit's indication that a retrospective determination "might be

---

[9] *People v. Castro, supra,* 78 Cal.App.4th 1402, the only California case other than *People v. Ary, supra,* 118 Cal.App.4th 1016 relating to the propriety of a retrospective competency hearing, is also instructive. Relying on the strong doubts the United States Supreme Court has repeatedly expressed about the reliability of retrospective competency hearings (*Drope v. Missouri, supra,* 420 U.S. 162, 183; *Pate v. Robinson, supra,* 383 U.S. 375, 387; *Dusky v. United States, supra,* 362 U.S. 402), the *Castro* court refused to order such a hearing *despite* the fact that the trial court twice appointed psychiatrists to evaluate the defendant's competence to stand trial. (*Castro,* at p. 1418.) (The *Castro* court also relied on the trial court's failure to order evaluation in the manner described in Penal Code section 1369, a factor not present in the case before us.)

feasible" necessarily implies that contemporaneous evidence is unnecessary. (Maj. opn., *ante*, at p. 12, fn. 4.) This reasoning is far too strained. First of all, the issue of feasibility had never previously been addressed by the parties, who had never been called upon to identify evidence bearing on that issue, and it therefore would have been entirely inappropriate for the Ninth Circuit to decide the question or even inquire into the quality of the evidence. The *factual* question whether a retrospective determination of Odle's competency was feasible was left by the Ninth Circuit for the state trial court. The Ninth Circuit's opinion may reflect an unexamined assumption (understandable at the time, but now known to be erroneous) that there was contemporaneous evidence of competency, but absolutely nothing in that opinion implies such evidence may be unnecessary in order to render a retrospective determination feasible. Indeed, such an implication would conflict with *explicit* Ninth Circuit indications to the contrary. (See, e.g., *Williams v. Woodford, supra*, 384 F.3d 567 at pp. 609-610; *Moran v. Godinez, supra*, 57 F.3d 690 at pp. 695-696.) The idea that the Ninth Circuit impliedly made new law in this case on an issue not presented to it seems to me fanciful.

I now turn to the two pieces of evidence the trial court and my colleagues believe might compensate for the absence of contemporaneous evidence, the passage of 23 years, and the other problems I have just mentioned: the testimony of William Gagen and a present mental examination of Odle.

### III.

A. *Gagen's Testimony*

Gagen came into the case shortly before trial when Patrick Meistrell, who had long represented Odle, suffered a mental breakdown. In a 1992 affidavit filed during state habeas proceedings, Gagen described the difficulties he experienced. The case "was unusually complex in its own right, involving two separate murders and potentially separate defenses which were also not simple. In addition, the case had proceeded through the system under the direction of another attorney, an attorney who was laboring under his own mental disabilities. . . . The case was far more difficult to prepare than normally would be the case due to the fact that I was not involved earlier in such stages

as the preliminary hearing and the initial work up. I also was unable to coordinate the psychiatric and physical evaluation of Odle which Mr. Meistrell apparently undertook, but which proved generally unproductive."

Gagen also explained that Odle, who he referred to as "Jim," "had difficulty tolerating stress and was concerned about his mental condition because he was afraid that he would completely lose control of himself and react irrationally in court, especially if he felt threatened, confronted, or confused in any significant way. Jim's overriding concern during trial seemed to be to not lose control of himself in court. He coped with that concern by mentally and emotionally 'shutting off' or 'shutting down' in court. I was also concerned about the potential for Jim to explode irrationally in court, and for that reason I also did not want Jim present in court unless necessary. I also encouraged him to block out the proceedings whenever they began to agitate him. As a result, we developed a practice where he would stare at a particular object or objects in the courtroom, such as a coffee cup or sign, so that he could simply focus on those to the exclusion of events in the courtroom that might disturb him. This was especially necessary at critical times in the trial, such as when Bryan Odle or other people he knew gave crucial testimony against him. We were unable to communicate in court about such testimony. Jim's condition of impulse control made it necessary to distract him from the courtroom evidence rather than involve him in it." Gagen also stated that during trial Odle was "preoccupied with minutiae," "always focused on his immediate daily needs," and "acquiesced in virtually all decisions that I made on his behalf."[10]

The district attorney introduced Gagen's affidavit into evidence because he believed it "demonstrates that Mr. Gagen clearly considered the issue of competency

_____

[10] Odle's passivity during trial may have unjustifiably induced the trial judge to assume he was competent. As the Ninth Circuit has stated in this case, "competence to stand trial does not consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." (*Odle v. Woodford, supra*, 238 F.3d at p. 1089, citing Note, *Incompetency to Stand Trial* (1967) 81 Harv. L.Rev. 454, 457-459.)

before trial," and that Gagen's failure to seek a court ordered mental evaluation therefore indicated he considered Odle competent to stand trial. The trial court received Gagen's affidavit into evidence for the limited purpose of enabling Dr. Martell to rely on it as a basis for his opinion. Martell did in fact rely upon the affidavit as evidence that Gagen's failure to claim incompetence at the time of trial indicated his belief that Odle was competent to stand trial, which Martell considered very significant. For example, Martell stated that Gagen's affidavit provided no evidence "that [Odle] acted out, that he appeared psychotic [or] that he spoke strangely," and that the absence of such information, together with the fact that Gagen raised no question of competency at the time of trial, "suggests" Odle was mentally competent to stand trial and is a basis upon which a retrospective competency determination may be deemed feasible.

At oral argument, the Attorney General conceded that the People were aware of their ability to call Gagen as a witness, but felt that his testimony became unnecessary after the receipt in evidence of his affidavit. The People consider the affidavit significant because it does not indicate Odle was incompetent or that Gagen ever doubted his client's competency and, in the People's view, the absence of such evidence supports the inference Odle was competent and shows the feasibility of a retrospective determination. In any case, whatever the People's reason or reasons for not calling Gagen as a witness, the trial court was clearly not responsible for the People's strategic decision.

The majority claims that "the issue of whether a party below will be deemed to have waived an issue for purposes of appellate review is a matter ultimately left to the appellate court's discretion." (Maj. opn., *ante*, at p. 18.) The two cases the majority cites for this proposition without explanation—*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 and *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 132—demonstrate that the majority relies on an exception to the general waiver rule not applicable in this case. Both cases declare that, "[a]s a general rule, failure to raise a point in the trial court constitutes . . . waiver and appellant is estopped to raise that objection on appeal. An exception to the general rule may be presented, however, *where the theory presented for the first time on appeal involves only*

*a legal question determinable from facts which not only are uncontroverted in the record,
but which could not be altered by the presentation of additional evidence.* [Citation.]"
(*Redevelopment Agency v. City of Berkeley,* at p. 167, italics added; *Jensen v. BMW of
North America, Inc.,* at p. 132.)

The impropriety of the majority's refusal to find waiver here could not be clearer.
First of all, and most significantly, the People are not here asserting the right to present
the evidence in question, which they continue to consider unnecessary with respect to the
issue of feasibility. The legal theory the majority expounds—that, in the circumstances
of this case, the feasibility of a retrospective competency hearing may be established on
the basis of Gagen's testimony and a present medical examination of Odle—is *not*
presented by the parties for the first time on appeal, *as the parties do not present the issue
at all.* As I have said, so far as the parties are concerned, the issue in this case is simply
whether the evidence presented (which includes neither Gagen's testimony nor a present
mental evaluation of Odle) was sufficient to establish the feasibility of a retrospective
competency determination, as the trial court determined. The People simply ask us to say
that it was.

Furthermore, the majority's legal theory does *not* involve "only a legal question
determinable from facts which not only are uncontroverted in the record, but which could
not be altered by the presentation of additional evidence." (*Redevelopment Agency v.
City of Berkeley, supra,* 80 Cal.App.3d at p. 167; *Jensen v. BMW of North America, Inc.,
supra,* 35 Cal.App.4th at p. 132.) Not only does the majority's theory of this case relate
to facts shown by the record to be highly controverted, it also rests heavily on facts the
majority believes might be altered by the presentation of additional evidence. Indeed, the
purpose and result of the majority's analysis is to enable its theory to be tested through
the presentation of evidence the People deliberately declined to present because they
considered it unnecessary, as they still do. This is not the proper function of an appellate
court.

The majority also says that "in view of [its] clarification of both the pertinence and
necessary substance of any testimony by Gagen and [also] the fact that the issue of

petitioner's competence to stand trial was not even raised until almost a decade after his trial and conviction, we clearly have the discretion to hold, and do hold, that there has been no waiver by the People of their right to call Gagen as a witness at a reopened hearing." (Maj. opn., *ante*, at p. 19.) This statement, for which the majority offers no authority, is simply unfathomable.[11]

To begin with, the fact that Odle's competence may not have been raised until nine years after trial (our record is silent on this), which the People would have been well aware of at the time they decided not to call Gagen as a witness, provides no logical basis upon which to provide the People an unsought opportunity to reconsider their decision. The majority's unremarkable "clarification[s]" of "the pertinence and necessary substance of any testimony by Gagen" (maj. opn., *ante*, at p. 19)—which boils down to no more than that the People's burden "was not to show that Gagen's recollection 'might' be refreshed . . . [but] to show that Gagen could provide meaningful testimony that would assist a trier of fact in determining whether his client was competent in 1983" (maj. opn., *ante*, at p. 17)—tell the parties nothing they should not already have known. Moreover, the district attorney never said or sought to show that Gagen's recollection "might" later be refreshed (a view expressed only by the trial court), he merely declined to call Gagen

---

[11] So, too, are the other makeweight reasons the majority tosses out as to why there should be no waiver. The first is that "the fact that Gagen was never called as a witness by the People was apparently at least partly due to the objections of Odle's counsel to the admissibility of any such testimony." (Maj. opn., *ante*, at p. 18.) The novel idea that a district attorney may be relieved of the consequences of his or her failure to call a witness or seek a particular type of evidence merely because the defense indicated it would object seems to me preposterous. It is of course the court, not counsel, that decides whether evidence may be admitted, and the trial court here was never asked to make that decision. The majority's remaining justification for finding no waiver is that the issue of whether Gagen would testify simply "got lost in the proverbial shuffle" (maj. opn., *ante*, at p. 19), implying that the People's failure to subpoena Gagen was inadvertent and should not be held against them. Such indulgence of the failure of counsel is stunningly uncharacteristic of this court. Suffice it for me to say that, as earlier explained, the People's decision not to call Gagen was consciously considered, not inadvertent.

as a witness, resting instead on his declaration. Furthermore, as the Attorney General justifiably points out, the law imposes no burden on the People to call Gagen (or any other person) as a witness. Their responsibility is simply to convince the trial court, however they can properly do so, "that there is sufficient evidence on which a 'reasonable psychiatric judgment' of defendant's competence to stand trial can be reached." (*People v. Ary, supra*, 118 Cal.App.4th at p. 1029, citing *Odle v. Woodford, supra*, 238 F.3d at p. 1089.) A party that could have but failed to provide a particular type of evidence should not be provided another opportunity to do so simply because an appellate court thinks it might cure the insufficiency of the evidence that was presented; least of all in a case such as this, in which the party that elected not to present the evidence is not seeking a belated opportunity to do so. The remand ordered in this case is not only legally unjustified but undermines the salutary principle of finality that encourages parties to present the strongest evidence they can when provided the opportunity. If this were a published opinion, parties would undoubtedly seize upon it to justify rehearings on factual disputes in which they did not prevail. Most would probably have stronger cases than the People here, who do not consider another hearing necessary and did not ask for one.[12]

Finally, given the circumstances of this case, it is almost impossible to imagine that Gagen could offer much useful information on the feasibility of a retrospective determination of Odle's competency beyond that provided by his affidavit. Aside from the fact that Gagen's recollection will almost certainly be diminished by the passage of 23 years, Gagen was not involved in the mental evaluation of Odle undertaken by

---

[12] The People may have at oral argument allowed that remand for another hearing is "permissible," as the majority points out (maj. opn., *ante*, at p. 20, fn. 10), but hardly surprising, as this acknowledgment was only made after the People became aware of our disposition to grant the petition, and is therefore self-serving. The Attorney General's chief contention at oral argument was that we should affirm the trial court's determination that a retrospective determination was feasible, because Dr. Martell's testimony, which the trial court principally relied upon, provided a sufficient evidentiary basis for that finding.

16

Meistrell, having entered the case at the eleventh hour. Due to Odle's passivity and distraction, Gagen was also "unable to communicate in court" with Odle regarding the testimony of significant witnesses, and Odle "acquiesced in virtually all decisions" that Gagen made. In short, Gagen's interactions with his client were considerably more limited in time and quality than is ordinarily the case. Nor does it appear that the People expect that Gagen's testimony will provide the People much more on the issue of feasibility than they feel they obtained from his affidavit and consider sufficient. As earlier indicated, under the People's theory, Gagen's significance lies in the fact that he never raised the issue of competency, which supports the inference that he did not feel his client's competency was questionable, and he was in a position to know. Gagen's testimony is not necessary to show that he did not raise the issue of competency with the trial court, because it is already established and undisputed.

More importantly, while observations of counsel are of course relevant to the question of competency and worthy of consideration, the testimony of counsel is not medical evidence and cannot provide the sole or primary basis upon which to determine competency, because if that were the case the problem created by the failure of counsel to seek a competency evaluation would, in *Catch-22* fashion, also provide the solution. That is not the law. As the Ninth Circuit pointed out in Odle's case, a defense attorney "is not a trained health professional, and his failure to raise [a] petitioner's competence does not establish that petitioner was competent." (*Odle v. Woodford, supra*, 238 F.3d at pp. 1088-1089.)[13] No case in which contemporaneous medical evidence is unavailable

---

[13] The majority relies on the statement of the Tenth Circuit in *Bryson v. Ward* (10th Cir. 1999) 187 F.3d 1193, 1201-1202, that " '[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable' [citation]" (maj. opn., *ante*, at p. 12), but neglects to acknowledge the sentence that follows the one it quotes, which declares that "[n]onetheless, *the concerns of counsel alone are insufficient to establish doubt of a defendant's competency.*" (*Bryson v. Ward*, at pp. 1201-1202, italics added, citing *Reynolds v. Norris, supra*, 86 F.3d 796, 800 and *Drope v. Missouri, supra*, 420 U.S. at p. 177, fn. 13.) If the concerns of counsel alone are insufficient to establish a doubt of competency, no reason appears why they should alone be sufficient to establish competency.

17

even suggests that the observations of defense counsel, as revealing as they may be, can provide the primary basis upon which to find a retrospective competency determination feasible.

B. *Present Psychiatric Evaluation*

The second piece of evidence the majority feels should be produced at another feasibility hearing is a psychiatric evaluation of Odle's present competency. This may be important, the majority says, because when Dr. Martell was asked whether a "psychometric" evaluation of Odle's competency in 2004 might indicate his competency more than 20 years earlier, he responded that "we" have "gotten better at it." According to Dr. Martell, a present mental examination of Odle "with the latest, greatest technology here in 2004 . . . may shed some light back in time to give us insight into his recovery of brain function, and give us a better gauge of how he was functioning 20 years ago based on how he's functioning now."

The People clearly understood and waived their right to request a present psychiatric evaluation of Odle by an expert of their choosing. At the commencement of the feasibility hearing, while the court and counsel were discussing the scope of discovery that would be allowed, the district attorney stated that he was considering whether to request the court to order Odle to submit to mental examination by the People's expert pursuant to *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478.[14] The court responded that it would not address that issue unless and until the People actually sought such an order. The district attorney responded that "[w]e're not quite to the point where we're prepared to file our notice of request for mental exam[ination]." It is settled that a party that fails to make an effort to have a court actually rule on an issue "will be deemed to have waived or abandoned the point and may not raise the issue on appeal." (*People v. Brewer* (2000) 81 Cal.App.4th 442, 461-462.)

---

[14] *Baqleh v. Superior Court, supra,* 100 Cal.App.4th 478 holds that a trial court has authority to order a criminal defendant to be examined by the People's expert, so long as the trial court's order complies with the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq.).

In his petition, Odle states that "the People brought—but abandoned—motions for a psychiatric examination of Mr. Odle to see what information, if any, he could provide, and to examine trial counsel." Citing *Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 808, and other cases, the petition argues that the failure to pursue such discovery and present specified evidence constitutes abandonment and justifies the inference that it is not available. The Attorney General does not take issue with this claim. Resting on the evidence they did present, and taking the position that it was unnecessary for them to have requested a present psychiatric evaluation of Odle (or to have called Gagen as a witness), the People effectively acknowledge their waiver.

Furthermore, entirely aside from the People's clear waiver, the evidence in question is manifestly incompetent.

Martell's brief statements that "psychometry," which he referred to as "the latest, greatest technology,"[15] "may" make it possible to reliably assess Odle's competency to stand trial more than two decades ago on the basis of a present mental evaluation cannot legally be credited.

So far as I am aware, no court has ever suggested that a present mental evaluation may be used as the basis upon which to reconstruct a defendant's competence to stand trial years earlier, and the only case even addressing the issue flatly rejects the

---

[15] The Oxford English Dictionary (2d ed. 1989) (OED) provides two definitions of "psychometry." The first, which suggests it may constitute quackery, is "[t]he (alleged) faculty of divining, from physical contact or proximity only, the qualities or properties of an object, or of persons or things that have been in contact with it." The second definition—i.e., "[t]he measurement of the duration and intensity of mental states or processes"—and the quotations employed by the OED to elucidate this secondary meaning, suggest "psychometry" may also refer to "the art of imposing measurement and number upon operations of the mind, as in the practice of determining the reaction-time of different persons," or the measurement of the effect of drugs on mental state. Neither definition, nor any of the quoted uses of the word employed by the OED, nor anything in the record before us, indicates that "psychometry" or "psychometrics" is employed in the manner Dr. Martell proposed, let alone that psychiatrists, psychologists or other knowledgeable health care professionals consider psychometrics a reliable scientific method of discerning an individual's competency to stand trial in the distant past.

proposition. In *Williams v. Woodford, supra*, 384 F.3d 567, the Ninth Circuit refused to credit retrospective competency assessments of experts because they were "based not upon medical reports contemporaneous to the time of the preliminary hearings or trial, but upon . . . neuropsychological testing conducted more than ten years after trial." (*Id.* at p. 609.)

Nor am I aware of any case indicating that "psychometry" is a reliable method of retrospectively determining competency to stand trial that has received general acceptance by recognized experts in the scientific field to which it belongs, so as to warrant receiving expert testimony based on the procedure. (See 2 Witkin, Cal. Evidence (4th ed. 2000) Demonstrative, Experimental, and Scientific Evidence, § 43, pp. 55-56, and cases there cited.) Dr. Martell never disclosed the basis, if there was any, for his observation that this "latest, greatest technology" might provide a gauge of how Odle was functioning at a particular point in time 23 years ago, and he had nothing whatever to say about the reliability of the asserted "technology," or whether it had ever been employed in the manner Martell proposed, or even whether a psychometric evaluation of Odle is possible given that he is now always heavily medicated. To my knowledge, no court has ever based a feasibility or retrospective competency evaluation on such evidence, even in part.[16] Dr. Martell testified that he had only twice been called upon to conduct retrospective competency evaluations, and contemporaneous medical evidence (which Martell agreed was a "key tool") was available to him in both cases. Relying on the 1980 Winig interview, Dr. Martell claimed that contemporaneous evidence is also available in

---

[16] The majority correctly points out that "a psychiatric evaluation of defendant's competency" has "consistently [been] identified as *crucial* to determining a defendant's [present] competency" (maj. opn., *ante*, at p. 16, italics added), and draws from this the inexplicable inference that such an evaluation may *also* be the basis for finding a *retrospective* competency determination feasible. However, as I have said, there is no case in which, after the passage of many years an evaluation of present competency was relied upon as the basis of a determination that a retrospective evaluation of a defendant's mental competency to stand trial was feasible, and the Ninth Circuit has explicitly rejected the idea that a present evaluation could be used for that purpose. (*Williams v. Woodford, supra*, 384 F.3d at p. 609.)

this case, and that his personal observations regarding the use of "psychometry" in the two cases he described was a proper basis for his opinion that it was feasible to use that method of retrospectively determining Odle's competence 23 years ago. As we know, and as the trial court found, the Winig interview is *not* contemporaneous, and Martell's testimony therefore cannot be deemed probative.

"Under existing law, where a witness testifies in the form of opinion not based upon his personal observation, the assumed facts upon which his opinion is based must be stated in order to show that the witness has some basis for forming an intelligent opinion and to permit the trier of fact to determine the applicability of the opinion in light of the existence or nonexistence of such facts. [Citations.]" (Cal. Law Revision Com. com., 29B Pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 802, p. 93.) Martell's testimony regarding the use of "psychometry" does not conform to this requirement. Martell provided no factual basis whatsoever for his vague statement that a "psychometric" evaluation of Odle's present mental state "may" provide "a better gauge of how he was functioning 20 years ago"; nor did he even define "this latest, greatest technology." His testimony that "psychometry" may be used to make a reliable retrospective determination of Odle's competency to stand trial 23 years ago amounts to no more than speculation.

Martell's failure to provide a factual basis for his opinion on the efficacy of "psychometry" relates not just to its admissibility but its value as evidence. The value of an expert's opinion "does not lie in his mere expression of conclusion. . . . [I]t is valuable only in regard to the proof of the *facts* and the validity of the *reasons* advanced for [his] conclusions." (*People v. Lawley* (2002) 27 Cal.4th 102, 132.) " 'Where an expert bases his conclusion upon assumptions which are not supported by the record, upon matters which are not reasonably relied upon by other experts, or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value.' " (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 563, quoting *Pacific Gas &*

21

*Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135.)[17]  As Martell provided no factual basis for his opinion that a present mental evaluation is an acceptable basis for a retrospective determination of competence to stand trial, it is entitled to no weight.  The majority's remand for the purpose of obtaining such an evaluation would therefore be unjustified even if the People had not waived their right to seek such an evaluation.

IV.

The majority's statement that "there are no substantive obstacles to a remand" to permit the trial court to receive the evidence the district attorney felt it unnecessary to present (maj. opn., *ante*, at p. 19) is based on the following statement in *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771: "It is a firmly established principle of law that '[t]he appellate courts have the power to order a retrial on a *limited* issue, if that issue can be separately tried without such confusion or uncertainty as would amount to denial of a fair trial.' " (*Id.* at p. 776; italics added.)  *Torres* and all of the other cases the majority relies upon to justify remand[18] are as inapposite as the cases the

---

[17] The majority says that the general rule that a reviewing court cannot substitute its evaluation of a witness's credibility for that of the fact finder applies to expert witnesses as well as lay witnesses, and that nothing in *Lawley* holds "even slightly to the contrary." (Maj. opn., *ante*, at p. 14, fn. 6.)  This attempt to dismiss *Lawley* is another strained effort to ignore settled legal principles.  Unlike the three cases the majority relies upon (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, *People v. Mercer* (1999) 70 Cal.App.4th 463, and *In re Katrina W.* (1994) 31 Cal.App.4th 441), *Lawley* relates to the *evidentiary value* of expert opinion pertaining to the mental competency of a criminal defendant.  The statement of the Supreme Court in *Lawley*, that expert evidence of mental competence "is valuable only in regard to the proof of the *facts* and the validity of the *reasons* advanced for the conclusions" (*People v. Lawley, supra,* 27 Cal.4th at p. 132), does no more than reiterate a well established principle.  (See, e.g., *People v. Bassett* (1968) 69 Cal.2d 122, 141; *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098.)  The concept of "evidentiary value" is not necessarily the same as that of "credibility," as my colleagues seem to think.

[18] Without discussion, the majority cites *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801; *Barmas, Inc. v. Superior Court* (2001) 92 Cal.App.4th 372, 376; *Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1477; *Springmeyer v.*

22

majority cites in support of its refusal to find waiver, because *Torres* and the other cases all involved *limited remands* on factual issues separate and distinct from others decided in the trial court on the basis of policy considerations that do not come into play here, *where there is but one factual issue.* In *Torres v. Automobile Club of So. California, supra,* 15 Cal.4th 771, an individual recovered a judgment that included an award for punitive damages against an insurer. The Court of Appeal reversed and remanded for retrial on all issues, even though it found no error other than that the punitive damage

---

*Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1575-1576; and *Haycock v. Hughes Aircraft Co.* (1994) 22 Cal.App.4th 1473, 1496.) (Maj. opn., *ante,* at p. 19.)

    The only other cases the majority discusses as bearing on the propriety of remand are *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886 and the 40-year-old opinion in *England v. Christiansen* (1966) 243 Cal.App.2d 413. (Maj. opn., *ante,* at pp. 19-20 & fn. 11.) Remand was ordered in *Resource Defense Fund* "with directions to issue a writ of mandate" necessary to effectuate appellate reversal of erroneous trial court rulings (*Resource Defense Fund,* at p. 900), which is completely different from remand for the further taking of evidence. *England v. Christiansen* was a case in which the trial court found that the directors of a corporation did not act willfully or negligently, but, due to erroneous reliance on an inapplicable statute, found it unnecessary to determine the question of their negligence. The Court of Appeal therefore remanded the case for the limited purpose of determining whether the conduct of the directors was negligent. The court found it unnecessary to order a new trial because it thought it unlikely additional evidence would be required. Accordingly, the Court of Appeal remanded the cause with directions to the trial court to make adequate findings on all issues, "based on the evidence now in the record." (*England v. Christiansen,* at p. 435.) However, entertaining the possibility that the trial court might "deem it necessary or advisable to receive additional evidence," the appellate court added that it was not "foreclosed from so doing." (*Ibid.*) Given the distinct difference between the severable issues of willful negligence, which the appellate court did not disturb, and simple negligence, which was yet to be determined, *England v. Christiansen* presented a very different situation from that here presented, in which there is but one, non-severable, factual question.

    So far as I am aware, the present case is the first in which a California court has ever ordered remand for the sole purpose of receiving specific pieces of evidence that could have been but, through no fault of the trial court, were not initially presented, and which relate to the sole factual issue presented and decided below. This unprecedented remand is all the more remarkable in that it is unsought and therefore wholly gratuitous.

award was excessive. The Supreme Court reversed the Court of Appeal, stating that the firmly established legal principle that appellate courts have power to order a retrial " 'on a limited issue' " only if " 'that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.' [Citation.]" (*Id.* at p. 776, quoting *Brewer v. Second Baptist Church, supra*, 32 Cal.2d at p. 801.) The court went on to explain the "underlying rationale": "To require a *complete* retrial when an issue could be separately tried without prejudice to the litigants would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties. [Citation.]" (*Torres*, at p. 776.)

The remand my colleagues order is not limited to a factual issue separate and distinct from a remaining factual question addressed by the appealed ruling. The remand my colleagues order serves only one unprecedented purpose: to relieve the People of the consequences of their decision not to present evidence they deliberately decided not to present and still consider unnecessary. No legitimate considerations of policy support such a judicial enterprise. Because the testimony of counsel and mental evaluation the People are now gratuitously directed to seek cannot compensate for the absence of contemporaneous medical evidence and the passage of 23 years, remand will be a waste of judicial resources and do no more than delay the inevitable conclusion that, under well established legal principles, a meaningful retrospective determination of Odle's competence to stand trial in 1983 is not feasible in the circumstances of this case.

Where, as here, the record indicates what the proper order should have been, an appellate court can reverse with directions to enter an appropriate order. (Code of Civ. Proc., § 43.) Doing so in this case, through the medium of an order granting Odle's writ unconditionally, is not only compelled by the record but would serve the interest of all parties and that of justice. The People, who indicated below that they would retry Odle if a retrospective competency hearing were found infeasible, could promptly refile criminal charges and move for a present determination of competency that, unlike a retrospective determination, would be truly meaningful and likely dispositive. The state and federal

24

habeas proceedings in this case have exhausted an unconscionable amount of time.  It is time to put the question of competency to rest.

The governing law does not permit a retrospective competency determination to be deemed feasible in the circumstances of this case.  For that reason I would grant Odle's writ unconditionally.

_____

Kline, P.J.

1

## DECLARATION OF SERVICE BY MAIL

2       I, the undersigned, declare:

3       1.      That declarant is and was, at all times herein mentioned, a citizen of the United States

4    and am employed in the City and County of San Francisco, over the age of 18 years, and not a party

5    to or interested in the within action; that declarant's business address is 100 Pine Street, 26th Floor,

6    San Francisco, California 94111.

7       2.      That on March 31, 2006, declarant served the PETITIONER'S APRIL 2006 STATUS

8    REPORT PER COURT ORDER OF OCTOBER 26, 2001 by depositing a true copy thereof in a

9    United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully

10   prepaid and addressed to the parties listed as follows:

11   Mr. James R. Odle
     P. O. Box C-71400
12   San Quentin, CA  94974

13   Dane R. Gillette, Esq.
     California State Attorney General's Office
14   455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-3664

15      3.      That there is a regular communication by mail between the place of mailing and the

16   places so addressed.

17      I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st

18   day of March, 2006, at San Francisco, California.

19

20                                                    _____
                                                      TAMARA J. LOVE
21

22

23

24

25

26

27

28